IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES GYPSUM COMPANY, <br><br> Plaintiff, <br><br> v. <br><br> 3M INNOVATIVE PROPERTIES COMPANY and 3M COMPANY, <br><br> Defendants. | Civil Action No.: 07 cv 6381 <br> Judge Darrah <br> Mag. Judge Keys |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

This motion presents this Court with a simple question: Whether Plaintiff United States Gypsum Company ("USG") can ignore a forum-selection clause in a contract the parties entered specifically to facilitate negotiations regarding this dispute. Because the clear answer is no, this Court should grant Defendants' motion to dismiss this case based on improper venue under Rule 12(b)(3), and allow the parties to resolve their disputes through an action currently pending in the United States District Court for the District of Minnesota, as required by the parties' 10-month old contract.

## FACTS

Just 10 months before filing the present case, USG entered a Confidential Disclosure Agreement (the "CDA") with Defendants 3M Innovative Properties Company and 3M Company (collectively "3M"). Affidavit of Sharon Grosh ("Grosh Aff.") at ¶ 3. The CDA begins with the following recitals:

MP3 20250429.3

> WHEREAS United States Patent 6,673,144 [(the "'144 patent")] has issued to [USG] concerning a low dust joint compound; and
>
> WHEREAS United States Patent 7,052,544 [(the "'544 patent")] has issued to 3M Innovative Properties Company (hereinafter referred to collectively with 3M Company as 3M) concerning a low dust wall repair compound; [and]
>
> WHEREAS *USG and 3M wish to confer regarding the subject matter of the USG patent and the 3M patent* and other confidential proprietary information owned by USG and/or 3M.

Grosh Aff., Ex. A at 1 (emphasis added).

The CDA further defines the "Information" to be disclosed pursuant to the CDA as:

> 3M's general business and financial information relating to low dust drywall compounds, and *information relating to 3M's patent portfolio for low dust drywall joint compounds;* and
>
> USG's general business and financial information relating to low dust drywall joint compounds, and *information relating to USG's patent portfolio for low dust drywall compounds.*

*Id.* at §3 (emphasis added).

The CDA further provides:

> The parties agree that this Agreement shall be construed, interpreted, governed, and applied in accordance with the laws of the State of Minnesota. The parties also agree that any dispute arising from *the subject matter of this Agreement shall be brought solely and exclusively in the United States District Court for the District of Minnesota.*

*Id.* at § 15 (emphasis added).

Pursuant to the protections afforded under the parties' CDA, 3M and USG engaged in substantial detailed communications "regarding the subject matter of the USG patent and the 3M patent." Grosh Aff. at ¶ 4, 5. From early 2007 through as recently as the first week of November 2007, USG and 3M engaged in negotiations regarding a license by which USG would obtain rights to lawfully practice the invention of 3M's '544 Patent. *Id.* at ¶ 6.

On or about November 12, 2007, USG abruptly broke off communications and brought this suit against 3M seeking a declaratory judgment of non-infringement and unenforceability, and cancellation of the '544 patent based on USG's '144 patent. *Id.* at ¶ 7. USG also brought an unjust enrichment claim seeking 3M's revenues obtained through licensing the '544 patent. USG's suit clearly addresses "the subject matter of the USG patent and the 3M patent" which forms the very basis for the parties' CDA.

In direct violation of the parties' CDA, USG brought its action in this Court, rather than in the District of Minnesota. Days later, 3M brought suit against USG for infringement of the '544 patent in the District of Minnesota—in accordance with the requirements of the CDA. Declaration of Bruce D. Manning ("Manning Dec."), Ex. A. 3M subsequently amended its Minnesota Complaint to assert claims against USG for breach of the CDA and another related agreement between the parties. Manning Dec., Ex. B. These claims are currently pending before the United States District Court for the District of Minnesota. Thus, the Minnesota action encompasses both the "subject matter of the USG patent and the 3M patent" at issue in USG's Complaint, and 3M's additional claims relating to USG's clear breaches of the parties' CDAs. Because USG has utterly disregarded the mandatory forum-selection clause between the parties and cannot meet its burden in overcoming that mandatory provision, this Court should dismiss USG's action and allow the parties to resolve their disputes in the District of Minnesota.

## ARGUMENT

I.  **This Court Should Dismiss USG's Action Pursuant To Rule 12(b)(3) For Improper Venue Because The Parties Expressly Agreed That The District Of Minnesota Is The Exclusive Forum For A Suit Relating To The Disputes At Issue.**

This Court should grant 3M's motion to dismiss for improper venue, based on the forum-selection clause of the CDA, under Fed. R. Civ. P. 12(b)(3).[1] *See Cont'l Ins. Co. v. Am. Nat'l Ins.*, 417 F.3d 727, 732-33 (7th Cir. 2005); *Cont'l Ins. Co. v. M/V Orsula*, 354 F.3d 603, 606-07 (7th Cir. 2003). Under Rule 12(b)(3), the district court is "not obligated to limit its consideration to the pleadings nor to convert the motion to one for summary judgment." *Am. Nat'l Ins.*, 417 F.3d at 733. Accordingly, this Court is free to—and should—consider the Agreement containing the controlling forum-selection clause. *See id.*

Forum-selection provisions are presumptively valid and must be enforced. *Muzumdar v. Wellness Intern. Network, Ltd.*, 438 F.3d 759, 762 (7th Cir. 2006); *Bonny v. Soc'y of Lloyd's*, 3 F.3d 156, 159 (7th Cir. 1993).[2] The presumptive validity of such a clause is overcome only if the

---

[1] The Seventh Circuit has recently noted that "it is not entirely clear whether a motion seeking dismissal based on a forum selection clause . . . is better conceptualized as an objection to venue, and hence properly raised under Rule 12(b)(3), or as a failure to state a claim, and thus properly raised under Rule 12(b)(6)." *Auto. Mechs. Local 701 Welfare and Pension Funds v. Vanguard Car Rental USA, Inc.*, 502 F.3d 740, 746 (7th Cir. 2007) (citing 5B Charles A. Wright and Arthur R. Miller, *Federal Practice & Procedure* § 1352 at 318-19 (3d ed. 2004)). But, the court noted, "'most of the decided cases use [Rule 12(b)(3)] as the basis' for deciding such a motion." *Auto. Mechs. Local 701*, 502 F.3d at 746 (internal citations omitted).

[2] Because there is no conflict among the potential applicable laws, the issue of what law should be applied to the question of whether the forum-selection clause requires dismissal need not be decided here. *Kochert v. Adagen Med. Intern., Inc.*, 491 F.3d 674, 677 (7th Cir. 2007). Federal Circuit law is not at issue because the issue of whether a forum-selection clause controls is not one that is "intimately involved in the substance of enforcement of the patent right." *Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found.*, 297 F.3d 1343, 1349 (Fed. Cir. 2002) (applying Tenth Circuit law to question of whether forum-selection clause was enforceable). The unsettled Seventh Circuit law on the question of whether federal or state law applies to this determination need not be reached either because there is no conflict between any of the potential laws that could apply. *Muzumdar*, 438 F.3d at 761 ("[U]nder either federal or Illinois law, forum selection clauses are valid and enforceable."); *Hauenstein & Bermeister, Inc.*

resisting party can show it is "unreasonable under the circumstances." *Bonny*, 3 F.3d at 159. (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972)). As the Seventh Circuit cautions, "[t]he Supreme Court has construed this exception narrowly." *Bonny*, 3 F.3d at 159. For instance, forum selection and choice-of-law clauses are "unreasonable" (1) if their incorporation into the contract was the result of "fraud, undue influence, or overweening bargaining power," *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 591 (1991); *M/S Bremen*, 407 U.S. at 12-13; (2) if the selected forum is so "gravely difficult and inconvenient that [the complaining party] will for all practical purposes be deprived of its day in court," *M/S Bremen*, 407 U.S. at 18; or (3) if enforcement of the clauses would contravene a strong public policy of the forum in which the suit is brought, declared by statute or judicial decision. *Id.* at 15.

None of these factors exists here. First, there was no fraud, undue influence, or overreaching bargaining power. The parties are both sophisticated, commercial entities entering into an arms-length negotiation. Second, USG's "day in court" is equally available to it in the District of Minnesota. Indeed, there is a case pending in that forum already relating to the same issues; USG need only bring its claims in that case. And third, there is no public policy that is jeopardized by having this case heard in the District of Minnesota. To the contrary, enforcement of the parties' forum selection clause promotes two important public policies.

First, enforcement of the forum selection clause promotes amicable resolution of business disputes. The CDA allowed the parties to explore a negotiated resolution of this dispute, without forcing 3M to first bring suit to secure its choice of forum in the event negotiations were unsuccessful. Allowing an alleged infringer like USG to ignore the contract it has signed would

---

*v. Met-Fab Indus., Inc.*, 320 N.W.2d 886, 890 (Minn. 1982) ("[W]hen the parties to a contract agree that actions arising from that contract will be brought in a particular forum, that agreement should be given effect...").

force a patent holder like 3M to "sue first and talk later," in order to ensure its choice of forum. Second, enforcement of the parties' forum selection clause promotes the public policy of ensuring the enforcement of freely negotiated contracts. *See Omron Healthcare, Inc. v. Maclaren Exports Ltd.*, 28 F.3d 600, 603 (7th Cir. 1994).

The Seventh Circuit's decision in *Omron* clearly supports enforcement of the parties' forum selection clause in this case. In that case, Omron sued Maclaren for trademark infringement after Maclaren terminated their distributorship agreement. The parties' agreement provided: "The parties hereto agree that all disputes arising out of this Agreement which cannot be resolved amicably between the parties shall be referred to the High Court of Justice in England which will have exclusive jurisdiction to determine such disputes." *Id.* at 601-02.

The district court enforced the parties' forum selection clause dismissed the case with prejudice. *Id.* at 602. The district court specifically rejected Omron's contention that the dispute arose out of Maclaren's trademark infringement and was, therefore, not within the scope of the forum selection clause. *Id.* at 602.

The Seventh Circuit affirmed in a forceful opinion. Rejecting Omron's argument that leaving England as the only forum offended public policy, the court inquired, "What policy, in particular?" *Id.* at 603. Indeed, the "dominant policy in contract cases," the court held, "is enforcing the parties' agreement, the better to promote commerce." *Id.* The court further admonished courts from permitting parties "to welch on their commitments to their trading partners." *Id.*

Ultimately, the court held: "Omron signed a contract promising to litigate in the High Court of Justice, or not at all. It broke that promise. Instead of seeking damages for breach of

contract, Maclaren is content with specific performance. The district court properly dismissed the suit." *Id.* at 604.

The Seventh Circuit's decision in favor of dismissal was unequivocal in *Omron*. And the facts of the present case are even more compelling for dismissal. In this case, the forum-selection clause is even broader and more precise. It applies not to disputes "arising out of" a particular agreement, but rather, "any dispute arising from *the subject matter of this Agreement.*" Ex. A at ¶ 15 (emphasis added). The two patents at issue in this case are unquestionably the subject matter of this Agreement; thus, there can be no doubt that the provision applies to this case.

Furthermore, USG signed the Agreement just 10 months ago (although it was deemed effective on January 1, 2006). Grosh Aff., Ex. A. USG can assert no basis that would allow it to avoid its provisions. In *Omron*, when Omron argued that the High Court might be more favourable to a U.K. national than an American court might be, the court inquired, "so what? Omron knew this when it signed the contract, and it would have received some compensation for the risk[.]" *Omron*, 28 F.3d at 604.

By executing the CDA, USG induced 3M to delay filing suit in Minnesota while the parties explored a potential licensing arrangement that would allow USG the right to lawfully practice the invention of 3M's '544 Patent. USG knew that by entering the CDA it was agreeing that any litigation "regarding the subject matter of the USG patent and the 3M patent" would have be resolved in the District of Minnesota. Having received the benefit of its bargain—attempted negotiation before litigation—USG cannot now avoid its clear obligations under the CDA.

## II. Dismissal, Not Transfer, Is The Appropriate Remedy.

Seventh Circuit law is clear that dismissal is the appropriate remedy for a breach of a forum-selection clause and any attempt by USG to transfer this case should be rejected. *M/V Orsula*, 354 F.3d at 608; *see also Am. Nat'l Ins.*, 417 F.3d at 735 (affirming dismissal); *Omron*, 28 F.3d 600; *Bonny*, 3 F.3d at 162-63 (affirming dismissal of even non-moving defendants); *Paper Exp., Ltd.*, 972 F.2d at 758 (affirming dismissal).

*Cont'l Ins. Co. v. M/V Orsula* stands for the proposition that transfer is not appropriate where a party ignored a forum-selection clause—even where the result is a dismissal that effectively bars the plaintiff's case (which is not the case here). In that case, the Seventh Circuit held that the district court was justified in dismissing two cases due to a forum-selection provision, rather than transferring them. 354 F.3d at 608. Since venue was improper, Continental was "left to argue that the district court should have transferred the cases under 28 U.S.C. § 1406(a)." *Id.* at 607. Section 1406 provides that if venue is improper, the district court "*shall dismiss, or if it be in the interest of justice, transfer such case* to any district or division in which it could have been brought." *Id.* (emphasis in *Cont'l*) (quoting 28 U.S.C. § 1406(a)).

In that case, Continental argued that transfer was necessary in the "interest of justice" because dismissal barred it from bringing another suit due to the statute of limitations. Reviewing the district court's decision for a "clear abuse of discretion," the Seventh Circuit credited the district court's reasoning that "in a case in which all parties are commercially sophisticated and familiar with the forms of litigation in which they engage, a transfer in the interests of justice is not justified when [t]here was nothing obscure about the proper forum." *Id.* at 608 (internal quotations omitted).

MP3 20250429. 3

8

Acknowledging that the result was harsh, the Seventh Circuit nevertheless held that the "proper penalty for obvious mistakes that impose costs on opposing parties and on the judicial system is a heavy one." *Id.* (quoting *Cote v. Wadel*, 796 F.2d 981, 985 (7th Cir. 1986)). The court therefore affirmed noting that "filing in the Northern District of Illinois was an obvious mistake made by a sophisticated party with representation." *Id.* Accordingly, the court refused to "second-guess the district court when it has not clearly abused its discretion." *Id.*

The facts here are even more compelling for dismissal. USG should not be allowed to impose on 3M the costs of litigating in a forum that differs from the forum the parties agreed upon. Like the losing party in *M/V Orsula*, USG is "commercially sophisticated and familiar with the forms of litigation in which [it] engage[s]." *Id.* Moreover, the Agreement that contains the forum-selection provision was signed just *10 months ago*. There is simply no excuse for pleading ignorance of it.

Furthermore, there is no countervailing factor, such as a statute-of-limitations bar, that would suggest that a transfer in "the interests of justice" might be appropriate. To the contrary, while dismissal would be appropriate even in the absence of another pending case, the presence of an already-pending case between the parties in the District of Minnesota provides yet another reason to grant outright dismissal. Upon dismissal in this forum, USG will not even need to effectuate service on 3M in another forum; the forum is ready for USG to assert these claims there. A transfer to that forum, on the other hand, would procedurally complicate the case already pending there. There simply is no need to have two cases on file in the same forum. To the extent that USG complains that its complaint should be effective in Minnesota, it should have thought of that before deliberately bringing suit in the wrong venue. There is simply no basis for this Court to do anything other than dismiss this suit in its entirety.

## CONCLUSION

This motion is straightforward. USG knew that any case it brought against 3M relating to the '144 patent and the '544 patent had to be brought in the District of Minnesota. Nevertheless, it deliberately brought suit in this court—an improper venue. Accordingly, 3M respectfully requests that this Court dismiss this case pursuant to the valid forum-selection agreement signed by the parties.

Date: December 3, 2007

KEEGAN, LATERZA,
LOFGREN & GLEASON, L.L.C

By:  /s/*Thomas B. Keegan*
Thomas B. Keegan (#6196077)
Edward W. Gleason (#6204438)

Suite 750
566 West Adams Street
Chicago, IL 60661
Tel.:  (312) 655-0200
Fax:  (312) 655-0202

-and-

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.

By:  /s/*Christopher K. Larus*
Martin R. Lueck (#155548)
Christopher K. Larus (#226828)
Anne M. Lockner (#295516)
Bruce D. Manning (#312289)

2800 LaSalle Plaza
800 LaSalle Avenue South
Minneapolis, MN 55402-2015
Tel.: (612) 349-8500
Fax: (612) 339-4181

**ATTORNEYS FOR DEFENDANTS
3M INNOVATIVE PROPERTIES
COMPANY AND 3M COMPANY**