IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES GYPSUM COMPANY, <br><br> Plaintiff, <br><br> v. <br><br> 3M INNOVATIVE PROPERTIES COMPANY and 3M COMPANY, <br><br> Defendants. | Civil Action No. 07 cv 6381 <br> Judge Darrah <br> Magistrate Judge Keys |

**Memorandum In Opposition To 3M's Motion To Dismiss**

Date: January 4, 2008

H. Michael Hartmann (Ill. Bar No. 1146130)
(mhartmann@leydig.com)
Bruce M. Gagala (Ill. Bar No. 0901342)
(bgagala@leydig.com)
Jeffrey B. Burgan (Ill. Bar No. 6203895)
(jburgan@leydig.com)
John P. Snow (Ill. Bar No. 6287443)
(jsnow@leydig.com)
LEYDIG, VOIT & MAYER, LTD.
Two Prudential Plaza, Suite 4900
Chicago, IL 60601
Telephone: 312-616-5600
Facsimile: 312-616-5700

ATTORNEYS FOR
UNITED STATES GYPSUM
COMPANY

# **TABLE OF CONTENTS**

I.   The Present Dispute Between 3M And USG Is A Patent Dispute, Not A Breach Of Confidentiality Dispute ............................................................................................... 2

II.  The 2006 CDA Governs Confidential Information Only, Not This Patent Dispute ................. 4

   A. The Plain Language Establishes That The Agreement Only Applies To Confidential Information ............................................................................................................... 4

   B. The Patent Dispute Does Not Arise From The 2006 CDA ................................................. 6

   C. 3M's Reliance on *Omron* Is Misplaced ............................................................................ 7

III. 3M's Parol Evidence Should Be Excluded ............................................................................. 11

IV. This Action Should Be Maintained Because It Is The First-Filed Action .............................. 12

V.  Conclusion ............................................................................................................................... 14

# TABLE OF AUTHORITIES

**Cases**

*Bowe, Bell & Howell Co. v. Midsouth Technologies*, LLC,
  No. 05 C 571, 2005 WL 1651167, at *2 (N.D. Ill. June 30, 2005) .................................. 13

*Camico Mut. Ins. Co. v. Citizens Bank*,
  474 F.3d 989 (7th Cir. 2007) .......................................................................................... 11

*Claber, S.p.A. v. Lowe's Companies*,
  No. 98c4760, 1999 WL 166974, *4 (N.D. IL March 23, 1999). ...................................... 13

*Compuware Corp. v. Health Care Service Corp*,
  203 F. Supp. 2d 952 (N.D. Ill. 2002),
  *opinion withdrawn*, No. 01 C 0873, 2002 WL 31598839 (N.D. Ill. Oct. 31, 2002 .................. 10

*Corcovado Music Corp. v. Hollis Music, Inc.*,
  981 F.2d 679 (2d Cir. 1993) ........................................................................................... 10

*Genentech, Inc. v. Eli Lilly & Co.*,
  998 F.2d 931 (Fed. Cir. 1993) ................................................................................ 1, 12, 13

*Health Discovery Corp. v. Ciphergen Biosystems, Inc.*,
  No. 2:06-cv-260 (E.D. TX Oct. 31, 2007) ........................................................................ 7

*Kochert v. Adagen Med. Intern., Inc.*,
  491 F.3d 674 (7th Cir. 2007) ............................................................................................. 8

*Macon Elec. Coil, Inc. v. Amphenol Corp.*,
  No. 05 C 2397, 2006 WL 1026884, at *2 (E.D. MO April 18, 2006) ............................ 10

*Mapes v. MTR Gaming Group, Inc.*,
  299 F.3d 706 (8th Cir. 2002) ........................................................................................... 11

*Muzumdar v. Wellness Intern. Network, Ltd.*,
  438 F.3d 759 (7th Cir. 2006) ............................................................................................. 8

*New Products Marketing Corp. v. Lowe's Companies, Inc.*
  No. 4:06-cv-35, 2006 WL 2811502 (D.N.D. Sept. 21, 2006) ......................................... 11

*Omrom Healthcare, Inc. v. Maclaren Exports Ltd.*,
  28 F.3d 600 (7th Cir. 1994) ........................................................................................ 7, 8, 9

*Southern Construction Co. v. Pickard*,
  371 U.S. 57 (1962) .......................................................................................................... 13

*Terra Int'l, Inc. v. Mississippi Chem. Corp.*,
  119 F.3d 688 (8th Cir. 1997) .................................................................................................. 10

*Vanguard Products Group, Inc. v. Protex Int'l Corp.*, Inc.,
  No. 05 C 6310, 2006 WL 695700, at *2 (N.D. Ill. Mar. 14, 2006) ......................................... 13

**Statutes**

35 U.S.C. § 291 ......................................................................................................... 2, 3, 6, 10

35 U.S.C. §§ 271 ................................................................................................................... 10

Fed. R. Civ. P. 13(a) ............................................................................................................. 12

United States Gypsum Company ("USG") opposes 3M Innovative Properties Company and 3M Company's (collectively "3M") Motion to Dismiss this first-filed action. 3M bases its motion on the false premise that a forum selection clause found in a Confidential Disclosure Agreement ("CDA") governs this patent dispute. 3M does not allege any breach of the CDA resulting from the improper disclosure of any 3M confidential information. The principal issue in this patent dispute is who first made the inventions claimed in separate patents owned by USG and 3M – an issue on which the CDA has no bearing. For strategic advantage, 3M seeks to transfer this case to Minnesota rather than answer a properly-filed action in this Court.

3M's motion is based on its distortion of the forum selection provision in the CDA. The forum selection provision governs disputes arising from the confidential disclosure agreement, e.g., unauthorized disclosure of confidential information, and not the patent dispute at the heart of the present action – and certainly not all disputes between the companies. USG's Complaint does not disclose any 3M confidential information and the patent claims have nothing to do with misuse or unauthorized disclosure of confidential information provided under the agreement at issue. 3M's motion does not allege misuse of any confidential information because there has been none. Had the partied intended to set the venue for the patent dispute in the CDA, they would surely have done so.

USG properly brought the patent dispute in Illinois. 3M's motion is merely an attempt to avoid the first-to-file rule set forth in *Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 937 (Fed. Cir. 1993).

I.  **The Present Dispute Between 3M And USG Is A Patent Dispute, Not A Breach Of Confidentiality Dispute**

The primary dispute between the parties is who first invented the subject matter claimed in two patents. USG owns U.S. Patent No. 6,673,144 (the "'144 patent") (Ex. 1 to USG's Complaint); 3M owns U.S. Patent No. 7,052,544 (the "'544 patent") (Ex. 2 to USG's Complaint). The USG '144 patent issued on January 6, 2004 and the 3M '544 patent issued on May 30, 2006. Both patents relate to a compound used to fill a joint between adjacent wallboards. The joint compound is formulated to reduce the amount of dust created during construction. Because patents with identical claim language were issued to different owners, the dispute in the first-filed action arises under a seldom-used section of the Patent Statute, 35 U.S.C. § 291, which authorizes a district court to resolve the issue of priority between interfering patents.

In 2001, the parties entered into a first Confidential Disclosure Agreement (the "2001 CDA") to facilitate discussions relating to low dust joint compounds. (Declaration of Bruce D. Manning submitted in support of 3M's Motion to Dismiss (hereinafter "Manning Decl."), Ex. B, attachment B). The 2001 CDA expired in 2004. (*Id.*). Thereafter, 3M advised the U.S. Patent and Trademark Office ("PTO") that it had copied the language of the claims from USG's '144 patent when 3M presented the claims that ultimately issued in the '544 patent. (Ex. 1 at 2-3 attached to Declaration of Jeffrey B. Burgan submitted concurrent with this Memorandum, hereinafter "Burgan Decl.").

The parties later entered into a second Confidential Disclosure Agreement (the "2006 CDA"), with an effective date of January 1, 2006, again to facilitate discussions relating to low dust joint compounds. (Manning Decl., Ex. B, attachment C). The 2006 CDA parrots many of

2

the provisions of the 2001 CDA. Importantly, the 2006 CDA does not address 3M's copying of USG's patent claims. Rather, the 2006 CDA only established rules governing the exchange of confidential information. USG did not agree that any dispute regarding the patents themselves would be litigated in Minnesota.

USG initiated this first-filed action on November 9, 2007. USG's Complaint sets forth three counts against 3M. Count I seeks a declaratory judgment that 3M's '544 patent is invalid, unenforceable and is not infringed by USG. Count II seeks a cancellation of 3M's '544 patent in favor of USG's '144 patent under 35 U.S.C. § 291. The final count seeks a disgorgement of any licensing benefit derived by 3M from licensing activities involving the patented technology.

On November 15, 2007, after receiving a copy of the Complaint in this action, 3M countered USG's Complaint by filing a mirror-image action in Minnesota. (Manning Decl., Ex. A). Specifically, Count I of 3M's Complaint alleged patent infringement of 3M's '544 patent by virtue of USG's making, using and selling of "the USG Low Dust Compound" in accordance with USG's '144 patent. (*Id.* at ¶¶ 17-20). In Count II, 3M sought cancellation of USG's '144 patent in favor of the 3M '544 patent. (*Id.* at ¶¶ 21-24).

Apparently realizing that USG's first-filed action would go forward, 3M repackaged its allegations in an Amended Complaint. (Manning Decl., Ex. B). The Amended Complaint repeated the patent counts from 3M's original Complaint and further alleged, unjust enrichment and breaches of the 2001 and 2006 CDAs. 3M then filed its motion to dismiss here. 3M's Complaint as originally filed is informative both for what it did and did not claim. Although 3M essentially duplicated the present action, 3M did not originally assert that the 2006 CDA required all such lawsuits to be filed in Minnesota. Rather, the 2006 CDA assertion in the Amended Complaint and 3M's motion to dismiss this action are no more than an afterthought strategy

3

which 3M has pursued for the purpose of substituting its choice of forum for that chosen by USG.

## II. The 2006 CDA Governs Confidential Information Only, Not This Patent Dispute

### A. The Plain Language Establishes That The Agreement Only Applies To Confidential Information

By the January 1, 2006 effective date of the 2006 CDA (Manning Decl., Ex. B, attachment C, p. 1), USG's '144 patent had issued and the application that became 3M's '544 patent had published with claims copied from USG's '144 patent. (Burgan Decl., Exs. 1, p. 1 and 3, p. 1). USG also had begun selling its joint compound now accused of infringement. 3M, for its part, offered to license USG in 2005 under the application that became 3M's '544 patent, asserting that it had rights in the claimed joint compounds. (Burgan Decl., Ex. 2). 3M's written offer also notified USG of its provisional patent rights based on the publication of its patent application and identified a specific USG product all at a time when there was no confidentiality agreement in effect. *Id.*

The parties entered into the 2006 CDA to facilitate an exchange of confidential information during possible negotiations concerning each company's low dust joint compounds. The title itself indicates that the 2006 CDA is a Confidential Disclosure Agreement. (Manning Decl., Ex. B, attachment C, p. 1). The recitals of the 2006 CDA contemplate that the agreement will enable discussions concerning confidential information and not public patent information:

> WHEREAS USG and 3M wish to confer regarding the subject matter of the USG patent and the 3M patent and other **confidential proprietary information** owned by USG and/or 3M; and
>
> WHEREAS during the course of conducting the desired discussion, the parties and/or their employees may become aware of confidential **information proprietary** to USG and/or 3M;

4

(*Id.*) (emphasis added). Consistent with that purpose, the 2006 CDA defines confidential information as:

> 3. The confidential information ("Information") that is the subject of this Agreement is described as:
>
> 3M's general business and financial information relating to low dust drywall joint compounds, and information relating to 3M's patent portfolio for low dust for low dust drywall joint compounds.
>
> USG's general business and financial information relating to low dust drywall joint compounds, and information relating to USG's patent portfolio for low dust joint compounds.
>
> The relationship created under this Agreement is confidential and is to be treated as Information according to the terms of this Agreement.

(*Id.* at ¶ 3).

The 2006 CDA further excludes various types of information from the scope of the Agreement. For example, the agreement excludes information that is already in the public domain such as USG's '544 patent, the 3M published application that became 3M's '644 patent, and 3M's license offer in June, 2005. (*Id.* at ¶ 5). The 2006 CDA is also limited in time: "This Agreement only relates to Information that is disclosed to a Recipient during the period from the Effective Date [January 1, 2006] to February 1, 2008. (See *Id.* at ¶ 6). By its clear and unambiguous language, the 2006 CDA does not apply to 3M's '544 patent or to USG's '144 patent. These items are public documents that are available from the PTO.

The forum selection provision of the 2006 CDA is likewise limited to disputes concerning the use of confidential information:

> The parties agree that this Agreement shall be construed, interpreted, governed, and applied in accordance with the laws of the State of Minnesota. The parties also agree that any dispute arising from the subject matter of this is Agreement shall be brought solely and exclusively in the United States District Court for the District of Minnesota.

(See *Id.* at ¶ 15). Consistent with ¶ 3, which defines "confidential information" as the "subject" of the agreement, disputes arising from the subject matter of the agreement refer to disputes concerning confidential information.

Under the plain language of the 2006 CDA, the forum selection provision only applies to disputes arising from the subject matter of the agreement, *e.g.*, an unauthorized disclosure of confidential information, and not to the patent dispute between the parties. The 2006 CDA does not provide that each and every 35 U.S.C. Section 291 action or patent infringement action, or any tort action dispute between the parties must be brought in Minnesota. USG's complaint does not allege any breach of the Confidentiality Agreement. As such, USG was not obligated to file this patent dispute in Minnesota.

**B.      The Patent Dispute Does Not Arise From The 2006 CDA**

3M bases its motion on the assertion that USG breached the 2006 CDA by filing the first-filed lawsuit in Illinois. The fundamental question, therefore, is whether the forum selection clause of the 2006 CDA required USG to bring its lawsuit in Minnesota. Such a construction of the 2006 CDA would be contrary to the plain language and intent of the agreement. The agreement itself excluded public documents such as the two patents now at issue. 3M recognized the public nature of patents when, in January, 2005, it copied claims from the USG '144 patent into 3M's pending patent application (that later issued as the '544 patent) and so notified the PTO. (Burgan Decl., Ex. 1).

The parties expressly defined the protected Confidential Information as the subject of the 2006 CDA. The 2006 CDA further limits the scope and duration of obligations imposed on the parties with respect to confidential information. For example, the agreement excludes information already in the public domain, or that comes into the public domain or was known independently to USG prior to January 1, 2006. (Manning Decl., Ex. B, attachment C at ¶ 5).

6

Moreover, there was a beginning and end to the time period for disclosure of information that would fall within the scope of the 2006 CDA: "This Agreement only relates to Information that is disclosed to a Recipient during the period from the Effective Date [January 1, 2006] to February 1, 2008." (See *Id.* at ¶ 6). By January 1, 2006, USG's '144 patent had issued and the application that became 3M's '544 patent had published and were well known to the parties. The confidential information protected by the 2006 CDA cannot be morphed into the patent dispute between the parties to satisfy 3M's venue preference.

Importantly, the mere existence of an agreement between the parties that contains a forum selection clause cannot lead to a conclusion that every dispute between the parties is governed by that forum selection clause. Moreover, even a broad forum selection clause in an agreement does not apply to claims that do not arise from that agreement. That an agreement must be referenced to determine whether the dispute falls within the scope of the agreement does not automatically trigger the forum selection clause. This point was made clear in *Health Discovery Corp. v. Ciphergen Biosystems, Inc.*, No. 2:06-cv-260 (E.D. TX Oct. 31, 2007). In *Health Discovery*, the court determined that a forum selection clause in a Mutual Confidentiality and Non-Disclosure Agreement had no bearing on a patent infringement dispute because, as here, the patent applications implicated in the patent suit were filed prior to the signing of the confidentiality agreement. As such, there could be no implication that "confidential" information had been included in the patent applications. *Health Discovery*, 2007 WL 128283 at *2. The patent applications that led to the USG and 3M patents were likewise filed well before the 2006 CDA effective date.

C.   **3M's Reliance on *Omron* Is Misplaced**

3M's heavy reliance on *Omrom Healthcare, Inc. v. Maclaren Exports Ltd.*, 28 F.3d 600 (7th Cir. 1994) in arguing that the forum selection clause of the 2006 CDA applies to this lawsuit

7

is misplaced. *Omrom* is factually distinguishable and legally inapplicable to this case. *Health Discovery* is much more on point. *Omron* involved a trademark dispute that arose out of a distributorship agreement. Upon termination of the agreement by Maclaren, Maclaren retained a number of unsold strollers that were ordered by Omron but never delivered. The strollers allegedly used the Omron trademark. Subsequently, another company started by a former Omron employee began to sell the strollers purchased from Maclaren. These strollers still bore an Omron trademark. In assessing whether a forum selection clause in the distributorship agreement applied, the court determined that construction and application of the agreement was necessary to resolve the trademark dispute between Omron and Maclaren. *Id.* at 601-602.

In so deciding, the Seventh Circuit stated that "all disputes the resolution of which arguably depend on the construction of an agreement 'arise out of' that agreement . . . for purposes of a forum-selection clause." *Omrom*, 28 F.3d at 603. This, however, did not mean that the act of simply determining whether the dispute invoked the agreement of necessity required application of the forum selection clause. In *Omron,* as in the many of the cases addressed in this Circuit, the forum selection clause as written applied to "all disputes arising out of [the] Agreement." *Id.* at 602; *see also, e.g., Muzumdar v. Wellness Intern. Network, Ltd.*, 438 F.3d 759, 761 (7th Cir. 2006) (forum selection clause specifically references any disputes arising out of the agreement or arising under or in connection with the agreement); *see also, e.g., Kochert v. Adagen Med. Intern., Inc.*, 491 F.3d 674, 677 (7th Cir. 2007) (forum selection clause applied to "[a]ny controversy, dispute, claim or complaint of whatever nature arising out of, in connection with, or in relation to the interpretation, performance or breach of [the] Agreement").

Unlike the forum selection clause in the *Omron* distributorship agreement that related directly to the trademark dispute, the 2006 CDA selection clause applies only to "any dispute

*arising from the subject matter of* this is Agreement." (Manning Decl. Ex. B, attachment C, ¶ 15) (emphasis added). The subject matter of the 2006 CDA is narrowly defined as confidential information that is identified and exchanged by the parties. (*Id.* at ¶ 3). Contrary to 3M's argument, the forum selection clause in the 2006 CDA is narrower than in *Omron* because it applies only to disputes arising from the subject matter of the agreement, *i.e.*, confidential information.

This lawsuit does not arise from the subject matter of the 2006 CDA. USG's claims for non-infringement, cancellation of 3M's patent, and unjust enrichment involve two publicly disclosed patents and do not relate to or involve any confidential information of either USG or 3M. Consequently, this case is distinguishable from *Omrom*, and does not arise "from the subject matter of [the 2006 CDA]." (Manning Decl., Ex. B, attachment C, ¶ 15). The forum selection clause of the 2006 CDA does not apply to this case.

3M's reliance on *Omron* is not only factually distinguishable, but also legally incorrect because the resolution of this declaratory judgment suit does not depend on the construction of the 2006 CDA. Even if the language of the 2006 CDA were interpreted broader than written, the forum selection clause still would not apply because this lawsuit does not arise out of the agreement. As noted in *Omrom*, "[b]ut-for causation is an unsatisfactory understanding of language referring to 'disputes arising out of' an agreement." *Omrom*, 28 F.3d at 602 (finding that courts should not apply the terms of an agreement to all disputes between the parties to the agreement merely because the parties had an agreement). The rule announced in *Omrom* is simply that "all disputes the resolution of which arguably depend on the construction of an agreement 'arise out of' that agreement . . . for purposes of a forum-selection clause." *Omrom Healthcare, Inc. v. Maclaren Exports Ltd.*, 28 F.3d 600, 603 (7th Cir. 1994). *See, e.g.,*

9

*Compuware Corp.* v. *Health Care Service Corp*, 203 F. Supp. 2d 952 (N.D. Ill. 2002) ( copyright claim did not "arise out of" a license agreement because the copyright infringement claim arose purely under the Copyright Act and it did not require interpretation of the license agreement) *opinion withdrawn*, No. 01 C 0873, 2002 WL 31598839 (N.D. Ill. Oct. 31, 2002; *see also Corcovado Music Corp.* v. *Hollis Music, Inc.*, 981 F.2d 679, 681-82 (2d Cir. 1993) (holding that copyright infringement action "arises under" the Copyright Act when complaint is for remedy granted by Act); *Macon Elec. Coil, Inc.* v. *Amphenol Corp.*, No. 05 C 2397, 2006 WL 1026884, at *2 (E.D. MO April 18, 2006) (forum selection clause in non-disclosure agreement does not govern purchase order contract claim).[1]

Where courts have found a forum selection clause to apply to a patent dispute, the clause has generally arisen in purchase agreements relating to products covered by the patents or in

---

[1] Eighth Circuit law similarly establishes that the 2006 CDA forum clause is inapplicable here. In *Terra Int'l, Inc.* v. *Mississippi Chem. Corp.*, 119 F.3d 688 (8th Cir. 1997), the court articulated a three-part test to resolve whether a forum selection clause in a contract should apply to tort claims brought by one of the contracting parties: (1) whether the tort claims "ultimately depend on the existence of a contractual relationship" between the parties; (2) whether resolution of the claims relates to interpretation of the contract; or (3) whether the contract-related tort claims involve the same operative facts as a parallel claim for breach of contract. *Terra Int'l*, 119 F.3d at 694. USG's patent claims do not depend on the existence, or require the interpretation, of the 2006 CDA. Rather, these claims arise independently from the Patent Laws, including 35 U.S.C. §§ 271 (patent infringement) and 291 (interfering patents). The operative facts giving rise to the patent claims relate to who first made the joint compound invention and whether USG committed acts of infringement. These issues are vastly different from the facts giving rise to the alleged breach of the 2006 CDA, namely, filing a lawsuit in Illinois. Therefore, the forum selection clause in the 2006 CDA does not govern this first-filed action.

license agreements relating to the patents. For instance, in *New Products Marketing Corp. v. Lowe's Companies, Inc.* No. 4:06-cv-35, 2006 WL 2811502 (D.N.D. Sept. 21, 2006), the court found a forum clause in a Master Standard Buying Agreement to apply to a patent and trademark dispute. The agreement included a covenant not sue provision as well as a termination clause and the court found that interpretation of the these provisions were integral to determining whether there was a basis for the infringement claim. *Id.* at *3-4. There is no sales agreement or license at issue here. There is only a simple confidentiality agreement whose provisions have no bearing on the instant patent litigation.

### III. 3M's Parol Evidence Should Be Excluded

3M relies on parol evidence regarding the interpretation of the 2006 CDA and reasons for entry into the 2006 CDA. Whether the 2006 CDA forum selection clause applies to the present dispute must depend entirely on the Agreement itself. Where an agreement is unambiguous, the Court looks to the four corners of the agreement and the agreement cannot be changed by extrinsic evidence. *Camico Mut. Ins. Co. v. Citizens Bank*, 474 F.3d 989, 992-93 (7th Cir. 2007); *see also, Mapes v. MTR Gaming Group, Inc.*, 299 F.3d 706, 707 (8th Cir. 2002). The 2006 CDA is not vague or ambiguous so as to be in need of construction. The agreement – by its very title – identifies the subject matter of the agreement and its import.

Outside evidence is unnecessary to interpret the provisions of the agreement and should not be considered. The Declaration of Sharon Grosh (submitted by 3M in support of its Motion), to the extent it seeks to provide evidence as to why 3M entered into the 2006 CDA or imputes reasons or actions to USG, should therefore be ignored. Ms. Grosh does not identify any allegedly confidential 3M information. Likewise, Ms. Grosh does not identify any alleged actions by USG that resulted in the disclosure of 3M confidential information. In fact, Ms.

Grosh does not even allege that 3M ever disclosed any confidential information to USG. She simply characterizes some discussions between the parties as licensing discussions.

The 2006 CDA includes no provision prohibiting either party from filing a lawsuit under the patent laws. The 2006 CDA also includes no provision requiring any license negotiations or to forbear filing a lawsuit under the patent laws pending license or other discussions. The contents or subject matter of any discussions that occurred have no bearing on the agreement itself and its interpretation. Such arguments by 3M merely are hindsight attempts to spin the agreement in a manner that is not provided for in the Agreement. The 2006 CDA provides for the exchange of confidential information, if so desired by either party and for the means of protecting such confidential information. Had these two sophisticated corporations desired the 2006 CDA to cover disputes such as licensing and the patent dispute, they could and would have done so.

## IV.   This Action Should Be Maintained Because It Is The First-Filed Action

Because the 2006 CDA's forum selection provision does not govern the patent claims, this case should go forward. In competing patent lawsuits filed in different forums, the forum of the first-filed action is the one that is favored. *Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 937 (Fed. Cir. 1993) ("The general rule favors the forum of the first-filed action, whether or not it is a declaratory action.") The Federal Circuit, whose law governs this issue, has specifically held that a second-filed suit should yield to the first-filed suit unless there was "sound reason that would make it unjust or inefficient to continue the first-filed action." *Genentech*, 998 F.2d at 938. This rule is based on well-established Supreme Court precedent that the compulsory counterclaim rule, Fed. R. Civ. P. 13(a) "was particularly directed against one who failed to assert a counterclaim in one action and then instituted a second action in which that counterclaim

12

became the basis of the complaint." *Southern Construction Co. v. Pickard*, 371 U.S. 57, 60 (1962).

Under the *Genentech* rule, courts have regularly denied motions to transfer or dismiss. In *Vanguard Products Group, Inc. v. Protex Int'l Corp.*, Inc., No. 05 C 6310, 2006 WL 695700, at *2 (N.D. Ill. Mar. 14, 2006), the court applied the *Genentech* rule noting that in "resolving venue disputes and issues of appropriate forum where two actions involve closely related patent infringement questions, the Federal Circuit has strongly endorsed the first-to-file doctrine." *See also, Bowe, Bell & Howell Co. v. Midsouth Technologies*, LLC, No. 05 C 571, 2005 WL 1651167, at *2 (N.D. Ill. June 30, 2005) ("After *Genentech*, the courts have routinely dismissed subsequently filed actions by patentees in favor of first-filed declaratory actions."). This Court should similarly deny 3M's motion to dismiss this first-filed action.

## V. Conclusion

As established above, this patent dispute does not arise from the 2006 CDA. The present action simply does not involve any improper disclosure of confidential information governed by the 2006 CDA. For the foregoing reasons, the Court should deny 3M's Motion to Dismiss. Finally, even if the Court were to consider the forum selection clause to apply to this action, the appropriate action would be to transfer the case to the District Court for the District of Minnesota, not dismiss this case altogether. *Claber, S.p.A. v. Lowe's Companies*, No. 98c4760, 1999 WL 166974, *4 (N.D. IL March 23, 1999).

Respectfully submitted,

\_\_\_\_\_s/ H. Michael Hartmann_____
H. Michael Hartmann (Ill. Bar No. 1146130)
(hhartmann@leydig.com)
Bruce M. Gagala (Ill. Bar No. 0901342)
(bgagala@leydig.com)
Jeffrey B. Burgan (Ill. Bar No. 6203895)
(jburgan@leydig.com)
John P. Snow (Ill. Bar No. 6287443)
(jsnow@leydig.com)
LEYDIG, VOIT & MAYER, LTD.
Two Prudential Plaza, Suite 4900
Chicago, IL 60601
Telephone: 312-616-5600
Facsimile: 312-616-5700

ATTORNEYS FOR
UNITED STATES GYPSUM COMPANY

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |
|---|---|
| UNITED STATES GYPSUM COMPANY,<br><br>        Plaintiff,<br><br>    v.<br><br>3M INNOVATIVE PROPERTIES COMPANY and<br>3M COMPANY,<br><br>        Defendants. | Civil Action No. 07 cv 6381<br>Judge Darrah<br>Magistrate Judge Keys |

**Certificate of Service**

I hereby certify that on the 4th day of January, 2008, I caused the following documents:

1. United States Gypsum Company's Memorandum In Opposition To 3M's Motion To Dismiss;

2. Declaration of Jeffrey B. Burgan and Supporting Exhibits

to be filed electronically with the Clerk of Court through ECF, and that ECF will send an e-mail notice of the electronic filing to all counsel who are currently on the Court's Electronic Mail Notice list including the following:

> Edward William Gleason
> Keegan, Laterza, Lofgren & Gleason, P.C.
> 566 West Adams Street
> Suite 750
> Chicago, IL 60661
> (312) 655-0200
> Email: egleason@kllglaw.com

Thomas Bernard Keegan
Keegan, Laterza, Lofgren & Gleason PC
566 West Adams Street
Suite 750
Chicago, IL 60661
(312) 655-0200
Email: tkeegan@kllglaw.com

Dated: January 4, 2008                    Leydig, Voit & Mayer, Ltd.

                                          s/ H. Michael Hartmann
                                          H. Michael Hartmann
                                          mhartmann@leydig.com
                                          Wesley O. Mueller
                                          wmueller@leydig.com
                                          Jeffrey B. Burgan
                                          jburgan@leydig.com
                                          Leydig, Voit & Mayer, Ltd.
                                          Two Prudential Plaza
                                          Suite 4900
                                          Chicago, IL  60601
                                          Tel:  312-616-5600
                                          Fax:  312-616-5700

                                          *Attorneys for Defendant,*
                                          *UNITED STATES GYPSUM COMPANY*