# EXHIBIT 5

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 166974 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d)

C

Claber, S.p.A. v. Lowe's Companies, Inc.
N.D.Ill.,1999.
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois, Eastern
Division.
CLABER, S.p.A., Plaintiff,
v.
LOWE'S COMPANIES, INC., et al., Defendants.
No. 98 C 4760.

March 23, 1999.

MEMORANDUM OPINION AND ORDER
PALLMEYER, District J.
*1 On July 31, 1998, Plaintiff Claber SpA ("Claber")
filed this trademark infringement lawsuit against
Defendants Lowe's Companies, Inc. ("Lowe's"),
Water Whiz, Inc. ("Water Whiz"), and Lego M.
Lemelshtrich ("Lego"). All three Defendants now
move this court to dismiss the complaint for lack of
personal jurisdiction pursuant to FED. R. CIV. P.
12(b)(2), for improper venue pursuant to FED. R.
CIV. P. 12(b)(3), or for failure to state a claim upon
which relief can be granted pursuant to FED. R. CIV.
P. 12(b)(6). In the alternative, the defendants move
for transfer of this case to the District Court for the
Western District of North Carolina, the designated
court in the forum selection clause, pursuant to 28
U.S.C. § 1404(a) for the convenience of the parties
and in the interest of justice. For the reasons
discussed below, the court finds that a valid and
enforceable forum selection clause makes venue
improper in this court and accordingly transfers this
matter to the District Court for the Western District
of North Carolina pursuant to 28 U.S.C. § 1406(a).

FACTUAL BACKGROUND

The facts relevant to the matter presently before the
court follow. Plaintiff Claber, an Italian company, is
the foreign parent of Claber, Inc., a wholly owned
subsidiary operating in the United States. (Compl.¶ ¶
1,5.) Defendant Lowe's is a North Carolina
corporation, with its principal place of business in
North Carolina, that runs a major chain of large,
super home improvement stores. (Id. ¶ 2.) Defendant
Lego is a manufacturer of irrigation equipment with
its place of incorporation and principal place of

business in Israel.(Id.) Defendant Water Whiz is a
Florida corporation, with its principal place of
business in Florida, that distributes Lego products in
the United States. (Id.)

In May 1996 and again in March 1997, Claber, Inc.,
Plaintiff's United States subsidiary, entered into a
Master Standard Buying Agreement ("Agreement")
with Defendant Lowe's.[FN1]Under the Agreement,
Lowe's agreed to purchase Italian-made garden hose
attachment products made by Plaintiff, the foreign
parent corporation. The Agreement included two
notable provisions: one required Claber, Inc. to
release Lowe's from any intellectual property claims
it may have against Lowe's for the duration of the
contract and thereafter; the other specified that
disputes arising out of the agreement must be brought
in a North Carolina forum and that North Carolina
law will apply. (See Lowe's Master Standard Buying
Agreement (hereinafter "Agreement"), at Art. V § 5,
Art. VIII § 8, Exh. B to Defendant Lowe's
Memorandum in Support of Its Motion to Dismiss
the Complaint or Transfer Venue (hereinafter
"Lowe's Brief").)

    FN1. The standard buying agreements
    between Claber, Inc. and Lego and Water
    Whiz are substantially (but not entirely)
    identical in their material terms to the
    agreement between Claber, Inc. and
    Defendant Lowe's. (Defendant's Water
    Whiz, Inc.'s and Lego M. Lemelshtrich
    Ltd.'s Combined Memorandum of Law in
    Support of Their Motion for Dismissal and
    Transfer (hereinafter "Water Whiz and
    Lego's Brief"), at 10). Because none of the
    parties dispute that contention and for
    convenience, the court treats the separate
    agreements together in the analysis below.

Whether the Agreement was terminated by Lowe's is
in dispute. The other Defendants apparently did not
independently terminate the Agreement. Plaintiff
contends that an October 20, 1997 letter from
Theresa A. Anderson, Divisional Merchandise
Manager of Lowe's, clearly terminated the
relationship between the two companies effective
March 11, 1998.[FN2](Plaintiff's Brief in Opposition to
Motion to Dismiss (hereinafter "Plaintiff's Brief"), at
10.) Ms. Anderson's letter stated, in pertinent part:

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 166974 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d)

Page 2

FN2. Claber arrived at this date by first noting that the termination clause in the Agreement requires that written notice by either party be tendered "not later than sixty (60) days prior to the end of the current term."(*See* Agreement, at Art. VIII § 16 .) The "current term" began March 12, 1997 and ended on March 11, 1998. Claber determined the date sixty days prior to March 11, which was January 10, 1998, and concluded that the October 20, 1997 letter thus constituted valid notice of termination for the Agreement.

**\*2** The decision to change vendors from Claber to an alternative supplier was based on case fill performance in the active partnership that is expected of all vendors.... Lowe's needs partners that work with us to grow in the category. Lowe's has spent enough time working on a correction of issues with Claber now covering two years. It is time to test new opportunities and alternatives.
(October 20, 1997 Letter, at 1, 3, Ex. 1 to Plaintiff's Brief.) Lowe's counters that the terms of the letter do not terminate the Agreement; rather, they "leave[ ] the door open for Claber to continue to do business with Lowe's."(Defendant Lowe's Companies Reply Memorandum in Support of Motion to Dismiss (hereinafter "Lowe's Reply"), at 5.) According to the letter, however, Lowe's had decided to change vendors from Claber to an alternative supplier based on past performance. (October 20, 1997 Letter, at 1.)

The distinguishing feature of Plaintiff's entire line of hose end goods is apparently its red-orange and black trade dress. Plaintiff claims that, after terminating the Agreement, Defendants prepared and offered for sale a line of hose end attachments imitating Plaintiff's goods with the distinctive red-orange and black trade dress. (Compl.¶ 11.) Plaintiff filed this suit on July 31, 1998, alleging trademark infringement, unfair competition, false designation, and deceptive trade practices.

All three Defendants have filed motions to dismiss or transfer venue. Defendants argue that this court lacks personal jurisdiction over them, requiring dismissal under FED. R. CIV. P. 12(b)(2). Additionally, they argue that venue in this district is improper because a forum selection clause dictates that venue lies in North Carolina, mandating dismissal under FED. R. CIV. P. 12(b)(3). Lastly, they contend that a contractual release of claims by Claber warrants

dismissal under FED. R. CIV. P. 12(b)(6). In the alternative, Defendants request that this court transfer this case to the District Court for the Western District of North Carolina under 28 U.S.C. § 1404(a) for the convenience of the parties and in the interests of justice.

### DISCUSSION

As other courts in this district have recognized, this court should first address the issue of the validity of the forum selection clause, for it is "clearly dispositive." *See Option Care, Inc. v. Mitchell*, No. 96 C 1466, 1996 WL 406643, at \*1 (N .D.Ill. July 17, 1996) (discussing only the validity of a forum selection clause and not the personal jurisdiction issue as the former is "clearly dispositive"). The court need not have personal jurisdiction over defendants to order transfer. *Cote v. Wadel*, 796 F.2d 981, 985 (7th Cir.1986); *Brooks v. Holmes, Rich & Sigler, P.C.*, No. 97 C 7218, 1998 WL 704023, at \*3 (N.D.Ill. Oct. 1, 1998). Accordingly, the court turns to whether the forum selection clause in the Agreement decides the matter and requires dismissal and/or transfer of this case.

### I. Validity of the Forum Selection Clause

**\*3** It is well-settled that contractual forum selection clauses are prima facie valid. *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1977). Such a clause is enforced unless the provision was procured by fraud or overreaching or enforcement would be unreasonable. *Paper Express Ltd. v. Pfankuch Maschinen GmbH*, 972 F.2d 753, 757 (7th Cir.1992). In essence, the clause will be enforced unless its enforcement would be a "serious inconvenience." *Frediani & Delgreco, S.P.A. v. Gina Imports, Ltd.*, 870 F.Supp. 217, 220 (N.D.Ill.1994) (citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 1526 (1991) (other citations omitted)). The Seventh Circuit has pronounced that the "law is clear: where venue is specified with mandatory or obligatory language, the clause will be enforced; where only jurisdiction is specified, the clause will generally not be enforced unless there is some further language indicating the parties' intent to make venue exclusive."*Paper Express*, 972 F.2d at 757. Furthermore, unless the contract explicitly indicates otherwise, a forum selection clause survives termination of the contract. *Advent Elec., Inc. v. Samsung Semiconductor, Inc.*, 709 F.Supp. 843, 846 (N.D.Ill.1989).

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 166974 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d)

Here, the Agreement's forum selection clause clearly provides that "the courts within the State of North Carolina will have exclusive jurisdiction with venue being in Wilkes County, State of North Carolina."(Agreement, Art. VIII § 8.) The provision not only specifies jurisdiction, but also indicates where venue is found. Therefore, under the law of the Seventh Circuit, the court should enforce the clause unless it was the result of fraud or overreaching, or is obviously unreasonable.

Claber alleges that the clause is unenforceable as an unconscionable contract contrary to public policy. (Compl.¶ 13(e) .) Specifically, Claber argues that because the situs of the alleged infringement was in Illinois, Illinois has an interest in hearing this case and public policy should invalidate the clause. (Plaintiff's Brief, at 12.) Claber bears a heavy burden to establish invalidity of a forum selection clause, however, and has offered little to satisfy it. Claber cites to _North American Phillips Corp. v. American Vending Sales, Inc.,_ 35 F.3d 1576 (Fed.Cir.1994); in that case, however, the Federal Circuit held only that patent infringement took place in the state of infringing sales rather than the state of patentee's domicile. _Id. at 1579._The case did not involve interpretation of a forum selection clause and did not address whether enforcement of such a clause would be unreasonable.

Claber further argues that even if the clause is not void as contrary to public policy, it is not binding because the Agreement was terminated on behalf of Lowe's by Ms. Anderson's October 20, 1997 letter. (Plaintiff's Brief, at 9-10.) Additionally, Claber urges, the court should find termination based on abandonment of the contract, evidenced by Claber's own conduct in ceasing to sell and/or deliver its goods to Lowe's as of July 1997. (Plaintiff's Brief, at 10-11.) Whether the contract was terminated either expressly or through abandonment, however, is irrelevant because forum selection clauses survive termination of a contract. In _Advent Electronics,_ plaintiff raised the same argument as Claber presents here: that the forum selection clause became unenforceable once the defendant terminated the governing contract. 709 F.Supp. at 846. The court rejected that contention, noting that termination of a contract does not divest parties of rights and duties already accrued, including the right to invoke a forum selection clause. This court agrees with the reasoning in _Advent Electronics._Indeed, Claber's argument is even weaker than the plaintiff's in _Advent Electronics,_ to the extent Claber is relying on the fact that Claber itself terminated the Agreement by failing

to sell goods to Lowe's.

*4 Having found that the forum selection clause in the Agreement valid and unaffected by any supposed termination of the Agreement, the court concludes that venue in this court is not proper, but instead lies in the District Court for the Western District of North Carolina.

## II. Transfer Pursuant to 28 U.S.C. § 1406(a)

Section 1406(a) [FN3] allows a district court to transfer a case filed in the wrong venue if it is in the interests of justice to do so. The case may be transferred to any district where it could have been brought. 28 U.S.C. § 1406(a). A district court must dismiss such a suit if it denies the transfer._Id._

> FN3.Section 1406(a) provides:
> The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.
> 28 U.S.C. § 1406(a).

In _Marklyn Controls Supply v. Pall Trinity Micro Corp.,_ 862 F.Supp. 140 (W.D.Tex.1994), the District Court for the Western District of Texas granted a motion to transfer under section 1406(a). Markedly similar to the case at hand, _Marklyn Control Supply_ involved a motion to dismiss or, in the alternative, to transfer venue. The parties there had negotiated a forum selection clause into their agreement, which the court found to be valid._Id._ at 141.Indicating that the nature of a motion to enforce a forum selection clause is that venue was wrong in the first instance, the court transferred the case to the selected forum pursuant to section 1406(a)._Id._ at 142.

Though _Marklyn Controls Supply_ is not controlling, this court nonetheless finds it instructive. Like the parties in that case, the parties here freely negotiated the contractually chosen forum. Plaintiff has not shown any fraud or overreaching by the Defendants with respect to the forum selection clause. Plaintiff was just as sophisticated a business as Defendants and was not in an unequal bargaining position. Plaintiff should not be allowed to bypass that contractual agreement now by bringing suit in the wrong court.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 166974 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

CONCLUSION

All three of the Defendants in this case were parties
to agreements with Plaintiff that contain a valid
forum selection clause. For the reasons discussed
above, the court grants the motion to transfer this
case pursuant to 28 U.S.C. § 1406(a) for all three
Defendants and orders that this cause of action be
transferred to the United States District Court for the
Western District of North Carolina.

N.D.Ill.,1999.
Claber, S.p.A. v. Lowe's Companies, Inc.
Not Reported in F.Supp.2d, 1999 WL 166974
(N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT 6

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 31598839 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d)

**H**
Compuware Corp. v. Health Care Servicee Corp.
N.D.Ill.,2002.
Only the Westlaw citation is currently available.
United States District Court,N.D. Illinois, Eastern
Division.
COMPUWARE CORPORATION, a Michigan
corporation, Plaintiff,
v.
HEALTH CARE SERVICE CORPORATION; a
mutual legal reserve company doing business as Blue
Cross Blue Shield of Illinois; Unitech Systems, Inc.,
an Illinois Corporation; and Various John Does,
Defendants.
**No. 01 C 0873.**

Oct. 31, 2002.

More Law Group, for Plaintiff Compuware
Corporation.
Brinks Hofer Gilson & Lione, for Defendant Health
Care Service Corp.
Welsh & Katz, Ltd., for Defendant Unitech Systems,
Inc.

### ORDER
BUCKLO, District Judge.
*1 The parties having settled their case and stipulated
that any use of the Compuware software at issue by
Unitech as a consultant for HCSC would not have
violated the terms of the License Agreement between
HCSC and Compuware, this case is dismissed with
prejudice pursuant to Fed.R.Civ. 41(a)(1), each party
to bear its own fees and costs. This court hereby
withdraws its opinion dated May 23, 2002. Any
pending motion in this case is terminated as moot.

### EXHIBIT A

### *STIPULATION AND ORDER*

IT IS HEREBY STIPULATED by and between the
parties to this action, through their designated
counsel, that any use of the Compuware software at
issue by Unitech as a consultant for HCSC would not
have violated the terms of the License Agreement
between HCSC and Compuware.

ACCORDINGLY, IT IS HEREBY ORDERED
THAT the Court's Opinion and Order dated May 23,
2002 granting Defendants' Motions for Summary
Judgment in part, is hereby withdrawn.

SO STIPULATED:

N.D.Ill.,2002.
Compuware Corp. v. Health Care Servicee Corp.
Not Reported in F.Supp.2d, 2002 WL 31598839
(N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT 7

Westlaw.

Slip Copy
Slip Copy, 2007 WL 128283 (E.D.Tex.)
(Cite as: Slip Copy)

Page 1

C

Health Discovery Corp. v. Ciphergen Biosystems, Inc.
E.D.Tex.,2007.
Only the Westlaw citation is currently available.
United States District Court,E.D. Texas,Marshall Division.
HEALTH DISCOVERY CORPORATION, Plaintiff,
v.
CIPHERGEN BIOSYSTEMS, INC., Defendant.
Civil Action No. 2:06-CV-260 (TJW).

Jan. 11, 2007.

Michael Charles Smith, The Roth Law Firm, Marshall, TX, Ryan T. Pumpian, W. Scott Creasman, Powell Goldstein, Atlanta, GA, for Plaintiff.
Sam Baxter, Lead Attorney, Marshall, TX, Rosemary Snider, Dallas, TX, John F. Garvish, II, Austin, TX, for Defendant.

### MEMORANDUM OPINION AND ORDER

T. JOHN WARD, United States District Judge.

*1 Before the Court is Defendant's Motion to Transfer Venue (# 10) and Plaintiff's Motion to Transfer Venue to Another Federal District Court in Texas or, Alternatively, to Take Discovery (# 21). The Court has carefully considered the parties' written submissions and GRANTS, in part, and DENIES, in part, Defendant's motion to transfer and DENIES Plaintiff's motion to transfer venue. It is ordered that this case be transferred to the Northern District of California for the reasons set forth below.

### I. Factual Background

In this patent infringement suit, Health Discovery Corporation ("HDC") claims that Ciphergen Biosystems, Inc. ("Ciphergen") infringes United States Patents Nos. 6,427,141 ("the 141 patent"); 6,760,715 ("the 715 patent"); and 6,789,069 ("the 069 patent"). Ciphergen has filed a counterclaim disputing the ownership of the patents based on collaborative agreements with the original assignee of the patents. HDC is a Texas corporation with its principal place of business in Georgia. Ciphergen is a Delaware corporation with its principal place of business in California.

The 141 patent application was filed in May 2000 and the 715 and 069 patent applications were filed in August 2000. Dr. Stephen Barnhill, an employee of Barnhill Genomics, LLC ("Barnhill Genomics") at the time the patents were filed, was listed as either the sole inventor or one of the inventors in all three patents. These patents were originally assigned to Barnhill Technologies, LLC and licensed to Barnhill Genomics.

In February 2001, Dr. Barnhill was terminated from Barnhill Genomics, and Barnhill Technologies changed its name to BIOwulf Technologies, LLC ("BIOwulf"). In April 2001, BIOwulf entered into a "Mutual Confidentiality and Non-Disclosure Agreement" with Ciphergen. In January 2002, BIOwulf entered into a "Contract Research Agreement" with Ciphergen. In February 2002, BIOwulf assigned a security interest in all three patents to a consortium of lenders in Savannah, Georgia as collateral for a loan. BIOwulf subsequently defaulted on the loan. As a result of the foreclosure sale, the rights to all three patents were transferred to the lenders. HDC then acquired rights to all three patents through asset purchase agreements with the lenders.

HDC filed this patent infringement against Ciphergen in June 2006. HDC now moves to transfer venue to the Western District of Texas or the Southern District of Texas, or, alternatively, to take discovery on Ciphergen's contacts with the Eastern District of Texas. Ciphergen also moves to transfer venue to the Northern District of California pursuant to 28 U.S.C. § 1406(a) and Fed.R.Civ.P. 12(b) (3), or, in the alternative, pursuant to 28 U.S.C. § 1404(a).

### II. Discussion

#### A. 28 U.S.C. § 1406(a)

"The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."28 U.S.C. § 1406(a). Ciphergen contends that venue in the Eastern District of Texas is improper because it does not "reside" within the district nor does it conduct business in this district.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 128283 (E.D.Tex.)
(Cite as: Slip Copy)

*See* 28 U.S.C. § 1400(b). A corporation is deemed to "reside" in the judicial district in which it would have personal jurisdiction if that judicial district were considered to be a state. *See* 28 U.S.C. § 1391(c). A court may exercise personal jurisdiction over a nonresident who has sufficient contact with the district in which the court sits. *See Beverly Hills Fan Co. v. Royal Sovereign Corp. ,* 21 F.3d 1558, 1565 (Fed.Cir.1994) (citations omitted). Ciphergen argues that it has not conducted any business within the Eastern District of Texas and, therefore, does not have sufficient contact with this district for this Court to assert personal jurisdiction. HDC has not produced any facts to the contrary, but suggests that Ciphergen likely has sufficient contact with the district based on its alleged business conduct in other parts of Texas. HDC now requests additional discovery into Ciphergen's possible contacts with this district. The Court agrees with Ciphergen that this suit was filed without sufficient facts to support its contention that venue was proper, and, therefore, this case was filed in the wrong district.

**\*2** The Court must now determine whether jurisdiction would be proper in the district requested in the motion to transfer, specifically the Northern District of California. HDC argues that the Northern District of California is not a proper venue because that court lacks personal jurisdiction over HDC. *Plaintiff's Response to Defendant's Motion to Transfer Venue ("Plaintiff's Response")* at 18. HDC, however, does not dispute that its suit "could have been brought" in the Northern District of California.[FN1] Therefore, contrary to HDC's personal jurisdiction argument, venue is proper in the Northern District of California.

> FN1. A patent infringement suit may be brought in the judicial district where the defendant resides, which, in this case, is the Northern District of California. *See* 28 U.S.C. § 1400(b).

Ciphergen contends that the case should be transferred to the Northern District of California because HDC is bound by the forum selection clauses, specifying California as the applicable jurisdiction, contained in the "Mutual Confidentiality and Non-Disclosure Agreement" and "Contract Research Agreement." HDC argues that it is not bound by the forum selection clauses because they were not a party to the agreements. Furthermore, HDC argues that the agreements could not have affected the applications for the patents-in-suit

because the applications were filed prior to the signing of the agreements. At this early stage of the case, the Court agrees with HDC that the patents could not contain any new subject matter resulting from the agreements. Therefore, the forum selection clauses in the two agreements do not apply. Defendant's motion to transfer to the Northern District of California pursuant to 28 U.S.C. § 1406(a) is DENIED.

### B. 28 U.S.C. § 1404(a)

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U .S.C. § 1404(a). Both parties have moved to transfer this case to a different venue.[FN2] As discussed previously, venue is proper in the Northern District of California. However, HDC also argues that the Western District of Texas or the Southern District of Texas would be a proper venue for this case because the alleged infringing products are located in those districts.

> FN2. In patent cases, the law of the regional circuit applies when considering transfer of venue pursuant to § 1404(a). *See Storage Tech. Corp. v. Cisco Sys., Inc.,* 329 F.3d 823, 836 (Fed.Cir.2003).

It is within the district court's sound discretion whether to transfer venue under section 1404(a). *Mohamed v. Mazda Corp.,* 90 F.Supp.2d 757, 768 (E.D.Tex.2000). When considering whether to transfer venue, the district court "must exercise its discretion in light of the particular circumstances of the case." *Hanby v. Shell Oil Co.,* 144 F.Supp.2d 673, 676 (E.D.Tex.2001); *In re Triton Ltd. Sec. Litig.,* 70 F.Supp.2d 678, 688 (E.D.Tex.1999) (stating that district courts have the discretion to decide whether to transfer venue according to "individualized, case-by-case consideration of convenience and fairness").

In determining the appropriate transferee court, the Court must consider "the convenience of the parties and witnesses." The convenience determination involves private and public interest factors. *In re Volkswagen AG,* 371 F.3d 201, 203 (5th Cir.2004). The private factors are the following: (1) the plaintiff's choice of forum; (2) the convenience of the parties and material witnesses; (3) the place of the alleged wrong; (4) the cost of obtaining the attendance of witnesses and the availability of the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 128283 (E.D.Tex.)
**(Cite as: Slip Copy)**

compulsory process; (5) the accessibility and location of sources of proof; and (6) the possibility of delay and prejudice if transfer is granted. *Mohamed, 90 F.Supp.2d at 771.* The court also balances the following public interest factors: (1) the administrative difficulties caused by court congestion; (2) the local interest in adjudicating local disputes; (3) the unfairness of burdening citizens in an unrelated forum with jury duty; and (4) the avoidance of unnecessary problems in conflict of laws. *Id.*

**a. Private Factors**

*1. Plaintiff's Choice of Forum*

**\*3** The plaintiff's choice of forum is neither controlling nor determinative, but is still a factor to be considered. *In re Horseshoe Entm't, 337 F.3d 429, 434 (5th Cir.2003).* The plaintiff initially chose to bring their suit in the Eastern District of Texas. It now requests a transfer to the Western District of Texas or the Southern District of Texas even though it could have initially brought this suit in any of those forums. The plaintiff's second or third choices of forum receives no deference, especially when the events giving rise to this infringement action do not dominate in either the plaintiff's or the defendant's choices of forum. *See Tiffany v. Hometown Buffet, Inc., 2006 WL 2792868, \*2 (N.D.Cal. Sept.28, 2006); see also Kawamoto v. CB Richard Ellis, Inc., 225 F.Supp.2d 1209, 1216 (D.Haw.2002).*

*2. The Convenience of the Parties and the Witnesses*

The Court will first assess the convenience of the parties. However, the convenience of the parties is accorded less weight in a transfer analysis than the convenience of non-party witnesses. *Shoemake v. Union Pac. R.R. Co., 233 F.Supp.2d 828, 832 (E.D.Tex.2002).* Ciphergen is headquartered in the Northern District of California. On the other hand, HDC is headquartered in Georgia. Although HDC is incorporated in Texas and operates a small office near Waco, Texas out of the home of one of its corporate officers, it will be inconvenienced regardless of whether this case remains in Texas or is transferred to California. In the Court's view, the convenience of the parties weighs in favor of transfer to the Northern District of California.

The Court now considers the convenience of the witnesses. Generally, in a venue transfer analysis, the most important factor considered is whether "key fact witnesses" will be substantially inconvenienced if the court should deny transfer. *Mohamed, 90 F.Supp.2d at 774.* Further, the convenience of non-party witnesses weighs more heavily in favor of transfer than the convenience of party witnesses. *Shoemake, 233 F.Supp.2d at 832.* The moving party must "specifically identify key witnesses and outline the substance of their testimony."*Mohamed, 90 F.Supp.2d at 775* (quoting *Hupp v. Siroflex of America, Inc., 848 F.Supp. 744, 749 (S.D.Tex.1994)*).

In its moving papers, the defendant has listed several witnesses located in California and has detailed the substance of their testimony. *Defendant's Motion to Transfer Venue ("Defendant's Motion")* at Exhibit 6. On the other hand, the plaintiff argues that the witnesses listed by the defendant relate mainly to the defendant's counterclaims. *Plaintiff's Response* at 16. In addition, the plaintiff argues that the witnesses addressing the issues of infringement are actually located throughout the United States and Europe.*Id.* at 16-17.This Court has considered the convenience of all of the material witnesses in this case. Given the record, the convenience of the witnesses suggests a transfer to the Northern District of California.

*3. The Place of the Alleged Wrong*

**\*4** The plaintiff alleges that Ciphergen's infringing products are located in the Western District of Texas and the Southern District of Texas. However, Ciphergen's products are also manufactured and developed at their corporate headquarters in California. Because the alleged infringing products are located in the Northern District of California and the Western and Southern Districts of Texas, this factor only slightly supports a transfer to California.

*4. The Cost of Obtaining the Attendance of Witnesses and the Availability of Compulsory Process*

Both parties have identified witnesses in California, Texas, and other states. The party witnesses and expert witnesses located across the country will be required to travel regardless of whether the case is in California or in Texas. Therefore, the cost of obtaining the attendance of witnesses is neutral as to transfer to the Northern District of California or to the two districts in Texas proposed by the plaintiff.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Slip Copy, 2007 WL 128283 (E.D.Tex.)

**(Cite as: Slip Copy)**

Page 4

There will be witnesses located across the country that would not be subject to the compulsory process in either California or Texas. Therefore, the availability of compulsory process is also a neutral factor.

### 5. *The Availability and Location of Sources of Proof*

The defendant contends that all of its developmental documentation and other evidence is located in the Northern District of California. *Defendant's Motion* at 22. In the Court's view, this factor weighs slightly in favor of transfer to the Northern District of California.

### 6. *The Possibility of Delay and Prejudice if Transfer is Granted*

The Fifth Circuit has suggested that this factor may be relevant in a transfer analysis "only in rare and special circumstances and when such circumstances are established by clear and convincing evidence."*Shoemake*, 233 F.Supp.2d at 834 (citing *In re Horseshoe Entm't*, 305 F.3d 354, 358 (5th Cir.2002)). Because it is still early in the litigation, the plaintiffs would not be prejudiced by a transfer. *Ledoux v. Isle of Capri Casinos, Inc.*, 218 F.Supp.2d 835, 838 (E.D.Tex.2002). Therefore, this factor is neutral. *Id.*

### b. Public Interest Factors

#### 1. *The Administrative Difficulties Caused by Court Congestion*

The parties do not address this factor. Therefore, this factor is neutral.

#### 2. *The Local Interest in Adjudicating Local Disputes*

The parties do not address this factor. However, the plaintiff is a Texas corporation and the defendant is headquartered in California. In addition, the plaintiff alleges infringing activity in both California and Texas. The Court finds that this factor is neutral as to transfer to the Northern District of California or the Western or Southern Districts of Texas.

#### 3. *The Unfairness of Burdening Citizens in an*

*Unrelated Forum with Jury Duty*

Citizens of the Northern District of California, Western District of Texas, or the Southern District of Texas would have an interest in determining if infringing activity is occurring in their respective districts. This factor is neutral as to transfer to any of those districts.

### 4. *The avoidance of unnecessary problems in conflict of laws*

**\*5** This case involves patent law and, therefore, will not involve a conflict of laws. This factor is neutral as to transfer to any of the districts proposed by the parties.

### c. Conclusion

Those factors that are not neutral support a transfer of venue. Given that the Court owes no deference to the plaintiff's alternative choices of forum, the Court GRANTS Defendant's Motion to Transfer to the Northern District of California pursuant to 28 U.S.C. § 1404(a).

### III. Conclusion

The Court DENIES Plaintiff's Motion to Transfer Venue or, Alternatively, to Take Discovery. The Court DENIES Defendant's Motion to Transfer Venue pursuant to 28 U.S.C. § 1406(a), and GRANTS Defendant's Motion to Transfer Venue pursuant to 28 U.S.C. § 1404(a). Accordingly, this case is hereby transferred to the Northern District of California.

SIGNED this 10th day of January, 2007.

E.D.Tex.,2007.

Health Discovery Corp. v. Ciphergen Biosystems, Inc.

Slip Copy, 2007 WL 128283 (E.D.Tex.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT 8

Westlaw.

Not Reported in F.Supp.2d                                                                                          Page 1
Not Reported in F.Supp.2d, 2006 WL 1026884 (E.D.Mo.)
**(Cite as: Not Reported in F.Supp.2d)**

Macon Elec. Coil, Inc. v. Amphenol Corp.
E.D.Mo.,2006.
Only the Westlaw citation is currently available.
  United States District Court,E.D. Missouri,Eastern
                    Division.
  MACON ELECTRIC COIL, INC., Plaintiff,
                       v.
  AMPHENOL CORPORATION, et al., Defendants.
              No. 4:05CV2397 RWS.

                 April 18, 2006.

David M. Fedder, Bryan Cave LLP, St. Louis, MO,
for Plaintiff.
Gary W. Bomkamp, Roberts and Perryman, St.
Louis, MO, for Defendants.

             *MEMORANDUM AND ORDER*
RODNEY W. SIPPEL, District Judge.
**\*1** This matter is before me on Defendant Amphenol
Corporation's ("Amphenol") Motion to Transfer [#
18]. Amphenol argues that this case should be
transferred to the United States District Court for the
District of Connecticut because the parties agreed to
have this dispute heard in Connecticut and because
the factors in 28 U.S.C. § 1404 weigh in favor of
transferring this case. Macon Electric Coil, Inc.,
("Macon") argues that there is no agreement between
the parties to have this case heard in Connecticut and
that the § 1404 factors weigh against transferring this
case. I agree with Macon, and the motion to transfer
will be denied.

     *There is no Agreement Between the Parties that this
           Case Should be Heard in Connecticut*

Macon and Amphenol have had an ongoing business
relationship for many years. In December 2002,
Macon and Amphenol initiated a Non-Disclosure
Agreement to protect Amphenol's "Proprietary
Information" [FN1] relating to a switch
(a.k.a."connector") it was developing for one of its
customers. Following the execution of the Non-
Disclosure Agreement through March 2003, Macon
and Amphenol worked together to design, develop,
and manufacture the switches.

FN1. According to the agreement,
"Proprietary Information" is information
relating to the "drawings, specifications,
manufacturing procedures and related
documentation of a technical, financial, or
business nature, including pricing and cost
information" of the switches.

The Non-Disclosure Agreement contains a forum
selection clause which states, "Any disputes arising
under or relating to this agreement, or the
[Proprietary Information], shall be heard in the State
of Connecticut and interpreted in accordance with its
laws ..."

The Non-Disclosure Agreement further provides that
"[Macon] has an interest in using the [Proprietary
Information] solely to manufacture and supply
connectors to Amphenol, and/or customers of
Amphenol which only Amphenol may designate in
its sole discretion, at *prices and pursuant to terms
and conditions which the parties intend to agree
upon later...*" (Emphasis added).

In January and April 2004, Amphenol issued
purchase orders to Macon requesting that Macon
produce approximately 175,000 solenoid coils, which
were a component of the switch that Amphenol had
created for its customer. The purchase orders contain
a law and forum clause that states, "this order shall be
governed by the laws of the state from which the
Buyer's order is issued."[FN2] The forum clause is silent
as to where a suit may be initiated.

FN2. The orders were issued from
Connecticut.

Macon alleges that in reliance on the purchase orders
it spent money creating tooling and inventory. Macon
alleges that Amphenol unilaterally breached the
terms of the purchase orders, causing Macon to incur
damages that are in excess of $75,000.

Amphenol now claims [FN3] that Macon's allegations
against it are "related to" the Non-Disclosure
Agreement and therefore the parties agreed to have
this case heard in Connecticut. Specifically,
Amphenol argues that the dispute relates to the
"pricing and cost information" of the switches. In its
reply brief, Amphenol alleges for the first time that

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 1026884 (E.D.Mo.)
(Cite as: Not Reported in F.Supp.2d)

Page 2

Macon has breached the terms of the Non-Disclosure Agreement "by bringing this litigation in the State of Missouri [and] by attaching the Non-Disclosure Agreement and the purchase orders to the original Petition ..."

> FN3. The motion to transfer was filed four months after Amphenol removed this case from state court.

*2 Amphenol's arguments are not persuasive. First, Macon's claim in this case is for simple breach of contract. The Proprietary Information protected by the Non-Disclosure Agreement is not implicated.

Second, Amphenol's recent claim that Macon has breached the terms of the Non-Disclosure Agreement is belied by the fact that it has not file a counterclaim against Macon for the alleged breach, although it did counterclaim for alleged breach of the purchase orders.

Finally, the Non-Disclosure Agreement specifically states that "[Macon] has an interest in using the [Proprietary Information] solely to manufacture and supply connectors to Amphenol ... at *prices and pursuant to terms and conditions which the parties intend to agree upon later...*" (Emphasis added). I take this to mean that the parties specifically excluded the terms of the supply contracts, i.e., the purchase orders, from the terms of the Non-Disclosure Agreement. That is, if the terms of the supply contracts were to be agreed upon later, then they cannot have been included in the Non-Disclosure Agreement. The purchase orders contain forum clauses that are silent as to where a suit may be initiated. Those forum clauses are controlling, and this case has been properly brought before this Court.

For the foregoing reasons, I find that the forum selection clause in the Non-Disclosure Agreement does not govern the issue of forum selection in this case. As a result, transfer pursuant to § 1404 based on the forum clause is not warranted. *See Terra Int'l v. Mississippi Chem. Corp.,* 119 F.3d 688, 692 (8th Cir.1997) ("Before a district court can even consider a forum selection clause in its transfer analysis, it must first decide whether the clause applies to the type of claims asserted in the lawsuit.").

*The Factors of 28 U.S.C. § 1404 Weigh Against Transfer*

Under 28 U.S.C. § 1404(a), "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."Unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed. *Gulf Oil Corp. V. Gilbert,* 330 U.S. 501, 508 (1947).

Amphenol argues that Connecticut would be the most convenient forum because it has witnesses there and because Macon has witnesses in Missouri, Georgia, and Florida. Amphenol's argument fails because it merely shows that Connecticut is one of four potentially convenient fora. Amphenol has not shown that the balance in favor of transfer is strongly in its favor. As a result, Amphenol's motion to transfer will be denied.

Accordingly,

IT IS HEREBY ORDERED that Amphenol's Motion to Transfer [# 18] is DENIED.

E.D.Mo.,2006.
Macon Elec. Coil, Inc. v. Amphenol Corp.
Not Reported in F.Supp.2d, 2006 WL 1026884 (E.D.Mo.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT 9

Westlaw.

Slip Copy
Slip Copy, 2006 WL 2811502 (D.N.D.)
(Cite as: Slip Copy)

Page 1

**c**
New Products Marketing Corp. v. Lowe's
Companies, Inc.
D.N.D.,2006.
Only the Westlaw citation is currently available.
United States District Court,D. North
Dakota,Northwestern Division.
NEW PRODUCTS MARKETING CORP., d/b/a/
Stringliner, Company, Plaintiff,
v.
LOWE'S COMPANIES, INC., Lowe's Home
Centers, Inc., and Does 1-10, Defendants.
No. 4:06-cv-35.

Sept. 21, 2006.

Michael S. Neustel, Benjamin C. Diederick, Neustel
Law Offices, LTD, Fargo, ND, for Plaintiff.
Sidney J. Spaeth, Vogel Law Firm, Fargo, ND, for
Defendants.

## ORDER GRANTING DEFENDANT'S MOTION TO TRANSFER

DANIEL L. HOVLAND, Chief District Judge.
*1 Before the Court is the defendant Lowe's Home
Centers, Inc., Motion to Transfer filed on July 26,
2006, and a Motion for Oral Argument filed on
August 17, 2006. For the reasons outlined below, the
Motion to Transfer is granted.

### I. BACKGROUND

On April 27, 2006, the plaintiff, New Products
Marketing Corp., d/b/a Stringliner (Stringliner) filed
a complaint against Defendant Lowe's Companies,
Inc. for patent infringement, trademark infringement,
and unfair competition. SeeDocket No. 1. Stringliner
amended its complaint on May 4, 2006, to add
Lowe's Home Centers, Inc. as a defendant as well as
unascertainable defendants denoted as Does 1-10.
SeeDocket No. 3. On August 10, 2006, as a result of
the defendants' Motion to Dismiss for Lack of
Personal Jurisdiction and for Improper Venue filed
on June 26, 2006, the parties stipulated and the Court
ordered the dismissal without prejudice of Lowe's
Companies, Inc. on August 11, 2006. SeeDocket Nos.
22, 23.

On June 26, 2006, Lowe's Home Centers (Lowe's)

filed a motion to dismiss or alternatively transfer this
action to the United States District Court for the
Western District of North Carolina. Lowe's contends
that the claims in this action arise out of an
agreement, the Master Standard Buying Agreement
(MSBA), that contains a valid and controlling forum
selection clause.

On July 26, 2006, Stringliner filed a brief in
opposition to Lowe's motion. Stringliner contends
that the forum selection clause does not control
because Stringliner's claims are unrelated to and
independent of the Master Standard Buying
Agreement and, in the alternative, the agreement was
terminated and its terms are inapplicable.

In its reply dated August 2, 2006, Lowe's contends
that whether Stringliner's claims are independent of
the Master Standard Buying Agreement or whether
the agreement was terminated requires a contractual
interpretation of the buying agreement. Lowe's
contends that the required contractual interpretation
triggers the forum selection clause and mandates a
transfer of this action.

### II. FACTS

Stringliner has its principal place of business in
Williston, North Dakota and has patented and sells
construction line reel products. Those products form
the basis of Stringliner's claims in this case. On
December 20, 1999, Stringliner entered into the
Master Standard Buying Agreement (hereinafter
referred to as the MSBA), with Lowe's and its other
entities. SeeDocket No. 12-4.The MSBA made
Stringliner a vendor for Lowe's and detailed the terms
of the business relationship between the two parties.

With respect to this dispute, there are three pertinent
clauses in the MSBA: (1) a forum selection and
choice of law clause, (2) a covenant not to sue clause,
and (3) a termination clause. The forum selection
clause provides as follows:
This agreement shall be construed and enforced in
accordance with the laws of the State of North
Carolina. The parties agree that the courts within the
State of North Carolina will have exclusive
jurisdiction with venue being in Wilkes County, State
of North Carolina.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2006 WL 2811502 (D.N.D.)
(Cite as: Slip Copy)

**\*2** *See* MSBA, Article VIII, ¶ 7. Pursuant to the covenant not to sue clause, Stringliner agreed not to sue Lowe's and its related entities during the period of the agreement and for two years after its termination. The MSBA states:Vendor represents, warrants, and covenants not to sue Lowe's during the term of this Agreement and for a period of two (2) years after its termination in respect to Lowe's purchase, use, sale, distribution, and promotion of products and packaging that incorporate in whole or in part the trademark, trade dress, copyright, patent, and/or trade secrets of the vendor.

*See* MSBA, Article V, ¶ 7. The MSBA also provides the following requirements for termination:The term of this Agreement shall commence on the date above and shall continue until the date of termination stated by either party in a written notice to the other party, such notice to be given no less than sixty calendar days before the expiration date of the termination.

*See* MSBA, Article VIII, ¶ 16.

Stringliner alleges that Lowe's primarily sold the STRINGLINER brand construction line reels, and that between 1997 and 2001, Lowe's purchased approximately one million dollars worth of those reels from Stringliner. *See*Docket No. 3-1.Stringliner also alleges that since 2002, Lowe's has ceased purchasing anything from Stringliner. *Id.*

On September 9, 1997, Stringliner applied for a United States patent for a new construction line reel with a reloadable spool called the STRINGLINER II.*Id.* That patent was issued on July 27, 1999, as United States Patent No. 5,927,635 (the 635 patent).*Id.* Stringliner alleges that it showed the new product to Lowe's and also submitted to Lowe's a "Lowe's Item Information Sheet" and several samples of the product. *Id.*

In 2001, Lowe's began to import and sell the TASK FORCE brand construction line reels. Stringliner's claim for patent infringement alleges that the TASK FORCE brand reels were designed based on the STRINGLINER II and that the TASK FORCE reels fall within the scope of the 635 patent. Stringliner also asserts claims of trademark infringement and unfair competition alleging that Lowe's caused the TASK FORCE reels to be associated with the STRINGLINER trademark by advertising and selling TASK FORCE reels as STRINGLINER reels.

On August 21, 2001, and September 7, 2001, Lowe's contacted Stringliner to obtain the information necessary to return Lowe's STRINGLINER inventory to Stringliner. *See*Docket No. 13-3.On June 21, 2002, Bob Black, on behalf of Stringliner, wrote Lowe's a letter airing his discontent with Lowe's actions regarding the STRINGLINER and TASK FORCE line, but acknowledging that Stringliner would pay its outstanding debt. See Docket No. 13-4.No express written termination notice was sent or received by either party.

## II. *LEGAL DISCUSSION*

28 U.S.C. § 1404(a) governs the ability of a federal district court to transfer a case to another district. Section 1404(a) provides: "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."28 U.S.C. § 1404(a) (2001).Section 1404(a) describes three general categories of factors that courts must consider when deciding a motion to transfer: (1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interests of justice. *Terra Int'l, Inc. v. Mississippi Chem. Corp.,* 119 F.3d 688, 691 (8th Cir.1997). Courts have recognized that the evaluation of a transfer motion requires a case-by-case evaluation of all relevant factors and is not limited to the three enumerated factors. The party seeking to transfer a case bears a heavy burden of establishing that the balance of the Section 1404(a) factors strongly favors a transfer. *See Graff v. Qwest Commc'ns. Corp.,* 33 F.Supp.2d 1117, 1121 (D.Minn.1999) (citing *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508 (1947)).

### A. *VENUE*

**\*3** It is well-established that a valid and applicable forum selection clause in a contract is a significant factor that figures in the district court's determination of the appropriate venue. *Terra Int'l, Inc. v. Mississippi Chem. Corp.,* 119 F.3d 688, 691 (8th Cir.1997) (citing *Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 29 (1988)). However, "[b]efore a district court can even consider a forum selection clause in its transfer analysis, it must first decide whether the clause applies to the type of claims asserted in the lawsuit."*Id.* at 692.Thus, the Court must first analyze whether the forum selection clause applies to Stringliner's claims, and if so, the effect of the forum selection clause on venue. *Id.* at 693.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2006 WL 2811502 (D.N.D.)
(Cite as: Slip Copy)

## 1. *FORUM SELECTION CLAUSE*

Stringliner asserts that its claims are entirely independent of the MSBA and beyond the scope of the forum selection clause or, in the alternative, that the MSBA was terminated more than two years before the commencement of this action and the forum selection clause has expired. "Whether tort claims are to be governed by forum selection provisions depends upon the intention of the parties reflected in the wording of particular clauses and the facts of each case."*Terra Int'l, Inc. v. Mississippi Chem. Corp.,* 119 F.3d 688, 693 (8th Cir.1997). Although the cases deciding whether similarly-worded forum selection clauses cover tort claims have reached different conclusions, the majority of the cases suggest that the clauses apply to tort claims as well as contract claims. *Id.*

While determining the scope of a forum selection clause is a "rather case-specific exercise," the Eighth Circuit has used three "variously phrased general rules" to ascertain whether a forum selection clause applies to tort claims. The Eighth Circuit did not adopt a single test in *Terra* but indicated that the tests would apply depending on the factual situation. 119 F.3d at 694-695.

The first test, utilized by the Third Circuit, asks whether the asserted claims "ultimately depend on the existence of a contractual relationship" between the parties. *Id.* at 694 (quoting *Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.,* 709 F.2 190, 203 (3rd Cir.1983)). The second test, employed by the Ninth Circuit, looks to "whether resolution of the claims relates to interpretation of the contract."*Id.* (quoting *Manetti-Farrow, Inc. v. Gucci Am., Inc.,* 858 F.2d 509, 514 (9th Cir.1988)). The third test, employed by the First Circuit looks to whether the claim involves "the same operative facts as a parallel claim for breach of contract."*Id.* (quoting *Lambert v. Kysar,* 938 F.2d 1110, 1121-1122 (1st Cir.1993)).

It is clear that a resolution of the issues before the Court depends upon the interpretation of the MSBA. In one breath Stringliner asserts that its tort claims do not depend on the interpretation of the MSBA, and in the next Stringliner interprets the covenant-not-to-sue clause to prevent suits involving only Stringliner's products actually sold by Lowe's. While that is one possible interpretation, another possible interpretation would be that the term "products" refers to all products sold by Lowe's, and therefore the MSBA prevents suit by Stringliner on all products Lowe's sells that incorporate Stringliner's "trademark, trade dress, copyright, patent, and/or trade secrets."*See* MSBA, Article V, ¶ 7. Stringliner's efforts to interpret the contract in an attempt to avoid the forum selection clause make it clear that the resolution of the tort claims relates to the interpretation of contract.

**\*4** In the alternative, Stringliner asserts that the MSBA was terminated more than two years ago by several product return forms sent by Lowe's, and as a result of a letter sent by Stringliner expressing disapproval of Lowe's actions. The product return forms notified Stringliner that Lowe's discontinued the sale of the STRINGLINER product. None of these transmittals contained any express language of termination. The MSBA provides: "The term of this Agreement shall commence on the date above and shall continue until the date of termination stated by either party in a written notice to the other party, such notice to be given no less than sixty calendar days before the expiration date of the termination."*See* MSBA, Article VIII, ¶ 16. It is undisputed that no such written notice was provided in this case by either party.

Stringliner urges the Court to find that the transmittals constituted "written notice" of termination and, therefore, no contract existed. To determine if there was written notice sufficient to terminate the MSBA, the Court must interpret the contract interpretation situation dealt with by the Ninth Circuit. Further, whether the covenant-not-to-sue clause can be interpreted depends on the continued existence of the MSBA. Because Stringliner's allegations depend on the existence and interpretation of the MSBA, the Court ultimately concludes that under the Third and Ninth Circuit tests described in *Terra,* Stringliner's claims fall within the scope of the forum selection clause.

Stringliner also argues that its allegations do not arise under the MSBA and relies on the Eighth Circuit's decision in *Farmland Indus., Inc. v. Frazier-Parrott Commodities,* 806 F.2d 848 (8th Cir .1986). In that case, the plaintiff and the commodities broker entered into an agreement that contained a forum selection clause. The plaintiff sued the commodities broker, as well as other individuals in a venue not covered by the forum selection clause. The plaintiff made allegations of fraud, breach of fiduciary duty, violations of the securities acts, and RICO. The Eighth Circuit affirmed the district court's order refusing to enforce the forum selection clause in the agreement between the plaintiff and the commodities

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2006 WL 2811502 (D.N.D.)
(Cite as: Slip Copy)

Page 4

broker because the district court concluded that the suit was "much broader than that contemplated by Farmland when it signed the agreement." 806 F.2d 848, 851-852. The Eighth Circuit also considered that Farmland could not have anticipated litigating its claims with the other defendants pursuant to the forum selection clause in the agreement. Here, the Court finds that the Third and Ninth Circuit tests are applicable to this case and finds Stringliner's reliance on *Farmland* unpersuasive.

The Court notes that the amended complaint lists Does 1-10 as defendants. Similar to the situation in *Farmland,* Does 1-10 are not a party to the MSBA, and Stringliner has not consented to a forum selection clause with Does 1-10. However, Does 1-10 are not ascertainable and have not been brought before the Court. Therefore, under the terms of the MSBA, Stringliner could have anticipated litigating its claims against the only currently ascertainable defendant, namely Lowe's. The Court finds that Stringliner's claims fall within the scope of the forum selection clause. As a result, the Court must next determine the appropriate weight to give that clause. A number of courts have distinguished a mandatory forum selection clause from a permissive clause, giving less weight to the latter when considering a motion to transfer. *See, e.g., Docksider, Ltd. v. Sea Technology, Ltd.,* 875 F.2d 762, 764 (9th Cir.1989); *McDonnell Douglas Corp. v. Islamic Republic of Iran,* 758 F.2d 341, 346-47 (8th Cir.1985); *Citro Florida, Inc. v. Citrovale, S.A.,* 760 F.2d 1231, 1232 (11th Cir.1985); *Keaty v. Freeport Indonesia, Inc.,* 503 F.2d 955, 956 (5th Cir.1974). If venue is set forth using the mandatory "shall" language, the clause is enforced as written and venue is found to be exclusive in the designated forum. If venue is specified with the permissive "may" language, or if only jurisdiction is specified, the Court must look further for language indicating the parties' intent regarding venue.

*5 There is no dispute that the forum selection clause specifically provides that the laws of North Carolina *shall* be applied, and that exclusive jurisdiction and venue will be in Wilkes County, North Carolina. Therefore, the Court finds that the forum selection clause is mandatory and, accordingly, significant weight is given to this factor. However, the existence of an applicable forum selection clause is only one factor to consider on a motion to transfer. *Terra Int'l, Inc. v. Mississippi Chem. Corp.,* 119 F.3d 688 (8th Cir.1997).

## 2. CONVENIENCE OF THE PARTIES

A plaintiff that chooses its home forum is generally presumed to have chosen the forum because it is convenient. *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 255-56 (1981). Regardless of where this action is venued, one of the parties will claim to be inconvenienced and placed at a disadvantage at trial. Transferring this action to a district court in North Carolina would only serve to shift the alleged inconvenience and hardship from Lowe's to Stringliner. *Terra Int'l Inc. v. Mississippi Chem. Corp.,* 119 F.3d 688, 696-97. "Merely shifting the inconveniences from one side to the other ... is not a permissible justification for a change of venue." *Id.* The Court finds that this factor weighs in favor of venue in North Dakota.

## 3. CONVENIENCE OF THE WITNESSES

To determine the convenience of the witnesses, the Court must examine the materiality and importance of the anticipated witnesses' testimony and then determine their accessibility and convenience to the forum. *Reid-Walen v. Hansen,* 933 F.2d 1390, 1396 (8th Cir.1991). Relevant considerations include the number of essential non-party witnesses, their location, and the preference of courts for live testimony as opposed to depositions. *Coast-to-Coast Stores, Inc. v. Womack-Bowers, Inc.,* 594 F.Supp. 731, 734 (D.Minn .1984).

Neither party has provided the Court with a list of potential witnesses. The witnesses with relevant testimony in this matter likely would be few, and potentially include one or more representatives from Stringliner and Lowe's, as well as expert witnesses from both sides. While the number and location of witnesses does not weigh strongly in favor of transfer, the Court notes that the potential witnesses from Stringliner and Lowe's either signed, negotiated, or were a party to the MSBA, and contemplated venue in North Carolina. *See Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 29 (1988) (noting that the district court "will be called on to address ... the convenience of a Manhattan forum given the parties' expressed preference for that venue" in a forum selection clause). Accordingly, this factor weighs slightly in favor of a transfer to the District of North Carolina.

## 4. INTERESTS OF JUSTICE

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2006 WL 2811502 (D.N.D.)
**(Cite as: Slip Copy)**

In *Terra Int'l. Inc. v. Mississippi Chem. Corp.*, 119 F.3d 688 (8th Cir.1997) the Eighth Circuit recognized several factors to consider in the interests of justice for purposes of transfer under 28 U.S.C. § 1404(a): (1) judicial economy, (2) the plaintiff's choice of forum, (3) the comparative costs to the parties of litigating in each forum, (4) each party's ability to enforce a judgment, (5) obstacles to a fair trial, (6) conflict of law issues, and (7) the advantages of having a local court determine questions of local law.

**\*6** With respect to the first factor, because the District of North Dakota is generally familiar with the facts of the case, the Court finds that judicial economy would not be better served by a transfer of venue. The second factor, plaintiff's choice of forum, weighs in favor of retaining the case in North Dakota. The next factor the Court must consider is the comparative costs to the parties of litigating in each forum. Neither party has offered the court any estimates as to comparative costs so this factor favors neither side.

Finally, turning to the remaining factors (each party's ability to enforce a judgment, obstacles to a fair trial, conflict of law issues, and the advantages of having a local court determine questions of local law) the Court sees no difficulty in either party enforcing a favorable judgment on its claims in either federal forum. Additionally, the Court does not find any relative advantages or obstacles to a fair trial for either party in either forum.

When the factors are viewed as a whole, the mandatory forum selection clause weighs strongly in favor of a transfer. The Court finds that the convenience of the parties and witnesses, and the interests of justice, do not tip the balance. Therefore, the Court finds that transfer to North Carolina is appropriate under the facts and circumstances presented.

### III. *CONCLUSION*

Based on the foregoing reasons, the Defendant's Motion to Transfer to the United States District Court for the Western District of North Carolina is **GRANTED.**(Docket No. 12). Accordingly, the Defendant's Motion for Oral Argument (Docket No. 27) is **DENIED** as moot. The Clerk of Court is directed to transfer the case to the United States District Court for the Western District of North Carolina.

**IT IS SO ORDERED.**

D.N.D.,2006.
New Products Marketing Corp. v. Lowe's Companies, Inc.
Slip Copy, 2006 WL 2811502 (D.N.D.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT 10

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 695700 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d)

C
Vanguard Products Group, Inc. v. Protex Intern.
Corp.
N.D.Ill.,2006.
Only the Westlaw citation is currently available.
United States District Court,N.D. Illinois, Eastern
Division.
VANGUARD PRODUCTS GROUP, INC. and
Telefonix, Inc., both Illinois corporations, Plaintiffs,
v.
PROTEX INTERNATIONAL CORP., Defendant.
No. 05 C 6310.

March 14, 2006.

Lee F. Grossman, Jeffrey Mark Drake, Mark M.
Grossman, Grossman Law Offices, Chicago, IL, for
Plaintiffs.
Philip T. Petti, Rudy I. Kratz, Fitch, Even, Tabin &
Flannery, Chicago, IL, for Defendant.

*MEMORANDUM OPINION AND ORDER*
DARRAH, J.
*1 Plaintiffs, Vanguard Products Group, Inc. and
Telefonix, Inc., filed suit against Defendant, Protex
International Corp., alleging Defendant's
infringement of U.S. Patent No. 6,799,994 B2.
Presently pending before the Court is Protex's motion
to dismiss for improper venue pursuant to
Fed.R.Civ.P. 12(b)(3) or, in the alternative, to
transfer venue pursuant to 28 U.S.C. § 1404(a).

BACKGROUND

A reading of the Complaint, including attachments,
and other matters of record supports the following
summary of the alleged operative conduct of the
parties.

Paul Burke, the founder and president of Telefonix,
Inc., obtained U.S. Patent No. 6,799,994 B2 ("the
'994 Patent") for an anti-shoplifting system, entitled
Cord Management Apparatus and Method. The anti-
shoplifting equipment protected by the '994 Patent is
a unique cord reel management system which permits
the unattended display of electronic consumer
products by retailers for use by potential purchasers,
while simultaneously preventing product theft. On
October 5, 2004, immediately after obtaining the

patent, Burke assigned the '994 Patent to Telefonix,
which is a designer and manufacturer of products in
the field of electronic cord management. Thereafter,
Telefonix exclusively licensed the '994 Patent to
Vanguard. Vanguard is a wholesaler of anti-
shoplifting equipment to various companies
throughout the United States. Vanguard is co-owned
by Burke, who is a Lake County, Illinois resident.
Protex is a former customer of Telefonix and is also a
purveyor of anti-shoplifting equipment to retailers.
Protex is a competitor of Vanguard and sells a cord
reel management system called PowerPro.

On March 4, 2005, Vanguard wrote a letter, notifying
Protex of its possible infringement of the '994 Patent.
Protex responded by letter on April 13, 2005, stating
its opinion that the '994 Patent did not cover its
PowerPro product.

On September 2, 2005, following Protex's execution
of a large contract for the sale of the PowerPro
product, Plaintiffs filed an amended complaint,
adding Protex as a party defendant to a pending
patent infringement action Plaintiffs had filed in the
Northern District of Illinois against Diam
International and Diam U.S.A. on March 4, 2005, for
infringement of the '994 Patent (the *Diam* action").
The *Diam* court permitted the joinder of Protex in
this suit.

On September 20, 2005, the *Diam* defendants filed a
motion, requesting the court to reconsider the
previous ruling that allowed Protex to be added as a
defendant. The *Diam* defendants argued that Protex
had been improperly joined inasmuch as Protex's
alleged acts of patent infringement did not arise out
of the same occurrence as the *Diam* action. On
October 26, 2005, the motion to reconsider was
granted; and the *Diam* court issued an order, denying
Plaintiffs' motion to amend the complaint by adding
Protex as a party defendant. The order stated that
"[p]laintiff is required to file a separate action against
one of the two defendants" and that "there is no
proper basis for joining the two defendants in one
action."

*2 On October 27, 2005, Protex filed a declaratory
judgment action, in the Eastern District of New York,
against Plaintiffs. In its complaint, Protex requested
that the New York court declare the '994 Patent
invalid and that Protex is not infringing and has not

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 695700 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d)

Page 2

infringed upon the '994 Patent.

On November 3, 2005, eight days after the declaratory judgment action was filed in the New York forum, Plaintiffs filed the instant action against Protex. Protex then filed this Motion to Dismiss or Transfer with this Court.

ANALYSIS

*Motion to Dismiss for Improper Venue Under the First-to-File Rule*

Protex moves for dismissal of this action pursuant to Fed.R.Civ.P. 12(b)(3), asserting improper venue under the first-to-file rule. In response, Plaintiffs contend: that the declaratory judgment action pending in the New York forum was not the first filed because Plaintiffs' claim in the Illinois forum in the *Diam* action should be considered the first filed; also, that the declaratory action filed by Protex was an improper, anticipatory filing. For these reasons, Plaintiffs contend their choice of the Illinois forum, rather than Protex's choice of forum, should prevail. Protex responds that it did not engage in forum shopping and that it did not file its action in the New York forum in apprehension of an ongoing threat of litigation.

The Federal Circuit Court applies its circuit law when reviewing district court decisions on patent law issues in the interest of promoting national uniformity. *See Midwest Indus., Inc. v. Karavan Trailers, Inc., 175 F.3d 1356, 1359 (Fed.Cir.1999).* In resolving venue disputes and issues of appropriate forum where two actions involve closely related patent infringement questions, the Federal Circuit has strongly endorsed the first-to-file doctrine. *See Genentech, Inc. v. Eli Lilly & Co., 998 F.2d 931, 937 (Fed.Cir.1993), overruled in part on other grounds by Wilton v. Steven Falls Co., 515 U.S. 277, 289, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995)(Genentech );Trading Tech. Intl., Inc. v. CQG, Inc., 2005 WL 3601936 at 2 (N.D.Ill. Oct.31, 2005)(Trading Tech.).* The first-to-file rule is a discretionary doctrine that provides if actions involving nearly identical parties and issues have been filed in two different courts, the court in which the first suit was filed should generally proceed to judgment. *See Genentech, 998 F.2d at 937.* This rule applies even if the filing is a declaratory judgment action. *See Elec. for Imaging, Inc. v. Coyle, 394 F.3d 1341, 1347 (Fed.Cir.2005)*

*(Elec. for Imaging );* *Genentech, 998 F.2d at 937.*

Determination of the Action First Filed

It must first be determined which of the two actions was first filed. As between the instant action and the action filed in New York (Case No. CV-05 5032), the record is unambiguous as to the dates of filing. The declaratory judgment action pending in the New York forum was filed on October 27, 2005. The instant action was filed eight days later, on November 3, 2005. Considering only these two actions, the declaratory judgment action filed in the New York forum was chronologically the first filed.

*3 Plaintiffs, however, argue Protex's New York declaratory judgment action should be deemed the second filed. Plaintiffs contend the order in the *Diam* action that denied their efforts to add Protex to the suit in the Illinois action imposed upon Plaintiffs a requirement to file this action against Protex; and, therefore, it should be afforded the status of an action pending prior to the time the New York action was filed. Said another way, it is Plaintiffs' position that because the court order in the *Diam* action imposed a requirement on Plaintiffs to file a separate action against Protex, the instant action should be treated as the first filed in relation to the New York action, inasmuch as the instant action effectively constitutes a continuation of the Illinois *Diam* action. The *Diam* court order, Plaintiffs contend, creates a special circumstance, favoring a determination by this Court that their litigation was the first filed because they had no choice but to file the instant action against Protex.

Notwithstanding Plaintiffs' characterization of the *Diam* order, it essentially determined that the pursuit of claims of patent infringement against both Diam and Protex must be by separate, independent actions. That is, the order specifies that in the prosecution of both claims of patent infringement, one of the proposed defendants in the *Diam* action must be sued in litigation apart from the *Diam* action. The crux of the order is (1) that the existing claims against the previously named defendants in the *Diam* action cannot be litigated in a single action with Protex and (2) that Plaintiffs, to the extent they intend to pursue prosecutions of both parties, would be required to bring their claims in separate actions. No reasonable reading of the language of the order supports an interpretation otherwise. Nothing in the procedural history nor the language of the *Diam* court in refusing to join Protex as a defendant in that case

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 695700 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d)

Page 3

demonstrates sound reason to make it unjust to find Protex the first filed in the New York District Court. See *Genentech,* 998 F.2d at 937-38.

### Exceptions to the First-to-File Rule

With the question as to which action was first filed having been resolved in Protex's favor, the Court now turns to the consideration of relevant equitable factors that might rebut the presumption favoring Protex's choice of forum in New York.

The rule favoring the forum of first-filed action is not absolute. See *Genentech,* 998 F.2d at 937;*MLR, LLC v. U.S. Robotics Corp.,* 2003 WL 685504 at *1 (N.D.Ill. Feb.23, 2003)(*MLR* ). The first-to-file doctrine is a general rule "favoring the right of the first litigant to choose the forum, absent countervailing interests of justice or convenience."*Genentech,* 998 F.2d at 938. "[R]igid mechanical solutions" to venue and jurisdiction problems are not counseled by the Federal Circuit. See *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.,* 342 U.S. 180, 183, 72 S.Ct. 219, 96 L.Ed. 200 (1952); *Trading Tech.,* 2005 WL 3601936 at 2.

*4 Exceptions recognized by the Federal Circuit are found when justice or expediency requires. *Genentech,* 998 F.2d at 937. Considerations affecting strict application of the first-to-file rule include "convenience and availability of witnesses, absence of jurisdiction over all necessary or desirable parties, the possibility of consolidation with related litigation, or considerations relating to the real party in interest."*Genentech,* 998 F.2d at 938. Other equitable considerations are whether a first-filed declaratory judgment is in bad faith, anticipatory and motivated by forum shopping. See *Serco Serv. Co. v. Kelley Co.,* 51 F.3d 1037, 1039 (Fed.Cir.1995)(*Serco Serv.*). These equitable factors, as possibly warranting exceptions to the general rule in favor of the first-filed action in patent cases, track those considered in ruling on a motion to transfer under 28 U.S.C. § 1404(a).*See Genentech,* 998 F.2d at 937-38;*Buztronics, Inc. v. Theory 3, Inc.,* 2005 WL 1113873 at 4 (N.D.Ill. May 9, 2005)(*Buztronics* ).

Accordingly, the relevant equitable factors to be considered are (1) jurisdiction over the parties, (2) judicial efficiencies and economies, (3) conveniences to the parties, (4) availability and convenience of witnesses, and (5) the extent to which the declaratory judgment action filed in another forum is anticipatory and motivated by forum shopping.

### Jurisdiction Over the Parties

In the instant case, because neither forum lacks jurisdiction, there is no countervailing effect on application of the first-to-file rule.

### Judicial Efficiencies and Economies

The *Genentech* court observed the importance of avoiding a "redundancy of litigation" and of "preventing multiplicity of actions and to achieve resolution in a single lawsuit of all disputes arising out of common matters."998 F.2d at 938. While the *Diam* action involving the '994 Patent is yet pending, that court determined there is no basis to join Protex with Diam as co-defendants. Therefore, "comprehensive disposition of litigation" of both actions cannot be achieved in that suit pending in the Illinois forum that would promote judicial economy or avoid "a redundancy of litigation." Although, Telefonix is not a named party in the New York patent infringement action, there does not appear to be any impediment to joining Telefonix as a defendant there. Consideration of promoting judicial efficiency and conservation of judicial resources here are neutral factors and, if not, weigh slightly in favor of the New York forum and, therefore, do not support an exception to the first-filed rule.

### Conveniences to the Parties

In evaluating conveniences for the parties, courts considers: the choice of forum of the first to file; the convenience of the witnesses; the ease of access to evidence; the location of material events; and the overall convenience of litigating in the respective forums. See, e.g., *Amoco Oil Co. v. Mobil Oil Corp.,* 90 F.Supp.2d 958, 960 (N.D.Ill.2000). For the New York-based Protex and its principals, the Illinois forum is obviously the less convenient forum. For the Florida-based Vanguard, the New York and the Illinois forums are equally inconvenient (except for Burke, one of its principals). For the Illinois-based Telefonix and its sole principal, Burke, the '994 Patent inventor who resides in Illinois, the New York forum is the less convenient forum. If the forum remains in Illinois, Protex and its organization will be caused, overall, greater inconvenience. On the other hand, only Burke would be more inconvenienced in the New York forum.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 695700 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d)

Page 4

*5 Regarding access to the evidence, New York, as the principal place of business for Protex, is the location of documents and evidence regarding sales, manufacturing personnel, equipment, and the witnesses responsible for the design of the Protex PowerPro product. Even though the Northern District of Illinois may be a convenient forum in this regard, unless it is clear that it is more convenient than New York, deference must be given to the New York forum-the preferred forum of the first-filed plaintiff. Deference to a later-filed action will not be given when to do so "merely serves to shift in conveniences from one to another."*See, e.g., RJF Holdings III, Inc. v. Kremer Laser Eye Center, Inc.* 2003 WL 22794987 at 4 (E.D.Pa. Nov.24, 2003) (quoting *Weight Watchers Intl. v. The Stouffer Corp.*, 1989 WL 73292 at 4 (S.D.N.Y. June 28, 1989). Therefore, the overall convenience weighs in favor of the New York forum; and no sound reason exists for making an exception to the application of the first-to-file rule.

### Availability and Convenience of Witnesses

Of major concern is the availability of non-party witnesses. *Buztronics*, 2005 WL 1113873 at 4. Party witnesses and those closely aligned with a party are presumed to be more willing to testify in a different forum. *Samsung Elec. Co. v. Rambus, Inc.*, 386 F.Supp.2d 708, 718 (E.D.Va.2005). Parties are generally assumed to be sufficiently motivated to have their own employees or other allies appear in person for trial wherever it might take place.*Buztronics*, 2005 WL 1113873 at 4. This is not so for non-party witnesses. Therefore, principal concern is to ensure that non-party witnesses are available for trial. *Buztronics*, 2005 WL 1113873 at 4. In this case, neither party has identified any non-party witnesses. At most, the parties have made reference only to witnesses who are employees or who are closely aligned with a party. Consequently, it may be assumed that each party can obtain the presence of these witnesses in the more distant venue. There is no indication that one party's witnesses will be burdened or inconvenienced more than the other party's witnesses. For the presumption of the first-to-file rule to be overcome, there must be a clear showing that it would be unjust or inefficient for the first-filed lawsuit to proceed. *See, e.g., Design Auto Group, Inc. v. Lund Indus., Inc.* 1996 WL 377063 at 1-2 (N.D.Ill. July 1, 1996)(*Design Auto* ). The factor of availability of non-party witnesses weighs in favor of neither party and presents no sound basis for exception to the first-to-file rule.

### Forum Shopping

Plaintiffs contend that Protex filed the declaratory judgment action in New York solely in anticipation of the instant lawsuit and was a manipulative attempt to select a forum. The Declaratory Judgment Act is not a tool to be used by potential litigants for the purpose of securing the forum. *See Schumacher Elec. Corp. v. Vector Products, Inc.*, 286 F.Supp.2d 953, 955 (N.D.Ill.2003).

*6 Whether the party filing the action did so for the purpose of preempting the infringement suit brought by another may be considered. *See Serco Serv.*, 51 F.3d at 1040. Intent of the filing party, though, is "merely one factor (to be considered) in the analysis."*Elec. for Imaging*, 394 F.3d at 1347-48;*Trading Tech*, 2005 WL 3601936 at 2.

Protex claims it filed the New York action in good faith and not for purposes of forum shopping. Other than the prior unsuccessful attempted joinder of Protex as a defendant in the *Diam* case, the Plaintiffs cannot show any conduct by Protext that would make its New York declaratory judgment action anticipatory and Protex guilty of forum shopping. Even if the New York action could be characterized as anticipatory, this does not, alone, warrant making an exception to the general first-to-file rule. *Elec. for Imaging*, 394 F.3d at 1348;*Buztronics*, 2005 WL 1113873 at 5. Because the impact of traditional forum shopping in patent cases has been in large part obviated by the creation of the Federal Circuit, the stakes of a race to the courthouse are now less severe. *Serco Serv.*, 51 F.3d at 1040. Dismissal of a declaratory action that is anticipatory in nature may be granted in view of other factors, including the location of the witnesses and documents, but cannot be premised solely because the suit was designed to anticipate a later-filed complaint in another forum. *Elec. for Imaging*, 394 F.3d at 1348. Here, there are no additional factors to support dismissal even if Protex's New York suit was found to be filed in anticipation of this action. Rather, those factors, as explained above, favor the New York forum and support the first-to-file rule.

Plaintiffs cite cases in support of the general proposition that the filing of an anticipatory declaratory judgment serves as a sufficient ground for departing from the first-to-file rule. *See Schwartz v. Natl. Van Lines, Inc.*, 317 F.Supp.2d 829, 833 (N.D.Ill.2004)(*Schwartz* );*S.J.G. Enterprises, Ltd. v.*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 695700 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

*Eikenberry & Assoc., Inc.,* 2004 WL 17944475 at 1 (N.D.Ill. August 5, 2004); *Galileo Intl. Partn. v. Global Village Commn., Inc.,* 1996 WL 452273 at 4 (N.D.Ill. Aug.8, 1996)(*Galileo* );*MLR,* 2003 WL 685504 at *1. The facts in each of the cases, however, are distinguishable. Specifically, in each of the cases, the potential litigants, prior to the filing of the declaratory action, had either been engaged in negotiations which broke down and the patentee clearly articulated to the alleged infringer an explicit and unequivocal threat of imminent suit or the alleged infringer surreptitiously filed the declaratory judgment action while feigning good faith efforts to negotiate the dispute.

Unlike the circumstances in the above cited cases, when Protex brought its declaratory judgment action in New York, there had been no negotiations between the parties. While Protex and Vanguard had exchanged letters charging and denying infringement, there was no further communication for a period of nearly eight months. At the time Protex filed in the New York forum, there existed no express or implied agreement between the parties to negotiate.

*Motion to Transfer Pursuant to Federal Change of Venue Statute*

**\*7** In light of the above ruling, the issue of transfer pursuant to 28 U.S.C. § 1404(a) is not considered.

CONCLUSION

In the instant action, the presumption favoring the forum of the first-filed action has not been overcome. There has been no showing of an imbalance of convenience nor is there present compelling circumstances or sound reasons which would make it "unjust or inefficient" to permit the District Court for the Eastern District of New York first-filed action to proceed.

For the foregoing reasons, Protex's Motion to Dismiss is granted. Protex's Motion to Transfer Venue is denied as moot.

N.D.Ill.,2006.
Vanguard Products Group, Inc. v. Protex Intern. Corp.
Not Reported in F.Supp.2d, 2006 WL 695700 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.