IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES GYPSUM COMPANY, ) | |
| ) | |
| Plaintiff, ) | Civil Action No.: 07 cv 6381 |
| ) | Judge Darrah |
| v. ) | Mag. Judge Keys |
| ) | |
| 3M INNOVATIVE PROPERTIES COMPANY ) | |
| and 3M COMPANY, ) | |
| ) | |
| Defendants. ) | |

### 3M's REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

The Confidential Disclosure Agreement (the "Agreement") between Plaintiff United States Gypsum Company ("USG") and Defendants 3M Company and 3M Innovative Properties Company (collectively "3M"):

- Contains a forum selection clause that expressly covers "any dispute arising from the subject matter of th[e] Agreement"; and

- Defines "the subject matter" of the Agreement as including both "the subject matter of the USG patent and the 3M patent," and certain defined confidential information.

The express language of the parties, their behavior both before and after the Agreement was signed, and public policy all require this Court to dismiss the present action in favor of the one subsequently filed in the parties' chosen venue – the Minnesota District Court.

# ARGUMENT

I. **THE PARTIES' FORUM SELECTION AGREEMENT COVERS USG'S CLAIMS.**

3M is not foolish. Its United States Patent No. 7,052,544 B2 (the "3M patent") issued in March of 2006, and 3M could have sued USG for infringement in the courts of Minnesota at any time after that. Instead, 3M chose to negotiate with USG. To protect against getting sued by USG in another court, 3M and USG signed the Agreement including a provision expressly agreeing to venue in Minnesota. USG is now attempting to evade the plain language of the Agreement, leaving this Court with three questions. First, what is included in "the subject matter of th[e] Agreement" which defines the scope of the parties' forum selection agreement. Second, do USG's claims in this case arise from "the subject matter of the Agreement?" Third, do public policy or any other facts suggest that the parties' forum selection agreement should not be applied? Based upon the answers to these questions, this Court should dismiss USG's claims in favor of the parties' pending Minnesota action.

    A. **The Subject Matter Of The Agreement Encompasses Disputes Relating To The USG Patent And 3M Patent.**

The full text of the two relevant parts of the Agreement read as follows:

> [Recital Three]: WHEREAS USG and 3M wish to confer regarding **the subject matter** of the USG patent and the 3M patent and other confidential proprietary information owned by USG and/or 3M; . . . .
>
> 15. The parties agree that this Agreement shall be construed, interpreted, governed, and applied in accordance with the laws of the State of Minnesota. The parties also agree that any dispute arising from **the subject matter** of this is Agreement shall be brought solely and exclusively in the United States District Court for the District of Minnesota.

Affidavit of Sharon Grosh ("Grosh Aff."), Ex. 1 (emphasis added; typographical error ("this is Agreement") in original).

The term "the subject matter" of the Agreement is used in only two places in the Agreement – the two quoted above. The first, in Recital Three, defines the two components of the "subject matter" of the Agreement – patents and confidential information. The second, in Paragraph 15, requires the parties to litigate disputes related to that "subject matter" in Minnesota.

USG's invitation to read the reference to "the USG patent and the 3M patent" out of the definition of "the subject matter" of the Agreement ignores the plain language of the Agreement and should be declined. And simply as a matter of common sense, is it more likely that both parties knew about 3M's patent and USG's activities, but signed an Agreement that would permit USG to initiate a declaratory judgment action against 3M wherever it wished at any time during those discussions? Or that both parties knew about 3M's patent and USG's activities but signed an agreement that would allow them to negotiate a potential resolution privately, while preserving 3M's opportunity to sue for infringement in Minnesota, as it could have done without ever signing the Agreement? The answer corresponds to the express language of the Agreement – disputes over 3M's patent, USG's patent, or certain confidential information belong in Minnesota.

The broad scope of the Agreement is further demonstrated by the fact the Agreement contains other provisions that are not limited to the treatment of confidential information. For example, the parties' Agreement provides that "*[a]ll communications between the parties, conduct, statements, and information* exchanged between the parties pursuant to" the Agreement shall be considered inadmissible settlement negotiations under Federal Rule of Evidence 408.

3

Grosh Aff., Ex. 1 at § 16 (emphasis added). This provision clearly applies to all aspects of the parties' negotiations, whether or not they involved the exchange of confidential information, and reflects the parties' intent that the "subject matter" of the Agreement encompassed all aspects of the parties' negotiations regarding the "subject matter of the USG patent and the 3M patent."

**B.    Question Two: Do USG's Claims Arise From That Subject Matter?**

USG's basic claim is in Count I, requesting a declaration of its rights under the 3M patent described in Recital Three above. *See* Complaint at ¶¶ 27-39. Because the 3M patent is part of the definition of "the subject matter" of the Agreement, Count I is subject to Paragraph 15 of the Agreement and the only proper venue is the federal district court of Minnesota. Count II arises under Section 291 of the patent laws and asks the court to determine the priority of invention of the claimed inventions in the 3M and USG patents. *See id.* at ¶¶ 40-41. Both of those patents, as noted above, are part of the definition of the subject matter of the agreement in Recital Three, and disputes related to them are subject to Paragraph 15 and may only be litigated in Minnesota. Count III is an unjust enrichment claim also based on the USG patent, which under Recital Three is part of the subject matter of the Agreement, and disputes related to it may only be litigated in Minnesota under Paragraph 15. *See id* at ¶¶ at 42-44. Based on the plain language of the Agreement, USG cannot seriously contend otherwise.

**C.    Question Three: Do Any Public Policy Or Other Factors Suggest That The Forum Selection Agreement Should Not Be Enforced?**

To the extent that the court wishes to consider public policy relative to the parties' contentions, 3M has the better of the argument. Courts have long supported private resolution of

4

disputes without the necessity of litigation, and enforcing the terms of the Agreement would do so here. *Omron Healthcare, Inc. v. Maclaren Exports Ltd.*, 28 F.3d 600, 603 (7th Cir. 1994).[1]

The behavior of the parties is also more consistent with 3M's interpretation than USG's. The USG patent issued in January 2004. Complaint, Ex. 1. The 3M patent issued in May 2006. *Id.*, Ex. 2. However, it was not until the parties engaged in negotiations pursuant to the Agreement – nearly eighteen months after issuance of the 3M patent – that USG brought this action.

Moreover, USG expressly relies upon the parties' negotiations under the terms of the Agreement to establish standing for its declaratory relief claim. According to USG, 3M has "created a reasonable apprehension on the part of USG that USG will face an infringement suit if it continues to sell its ... product." Complaint at ¶ 28. According to USG, this "reasonable apprehension" arises *solely* from the parties' communications conducted under the terms of the Agreement. The only specific communication alleged by USG is that "in October 2007, [3M] again demanded that USG take a royalty bearing license under the [3M] patent. USG has declined to take a license under the terms demanded by 3M." Complaint at ¶ 7. 3M's alleged October 2007 "demand" that USG take a license to the 3M patent and the parties' communications regarding "the terms demanded by 3M," occurred under the terms of the

---

[1] USG's attempts to distinguish the Seventh Circuit's decision in *Omron Healthcare* are unavailing. The court in *Omron Healthcare* confirmed the strong presumption in favor of enforcing forum selection clauses. *See id.* at 603. While the specific agreement in *Omron Healthcare* applied only to disputes "arising out of" the Agreement at issue, the forum selection clause at issue in this case is substantially broader and applies to "any dispute arising from the *subject matter* of th[e] Agreement." By extending the scope of the forum selection clause to disputes arising from the *subject matter* of the Agreement, the parties clearly expressed their intention that the provision would not be limited to disputes arising from the Agreement itself. For this same reason, cases which define the scope of forum selection clauses applying to disputes arising "from" or "out of" an Agreement, do not fully define the scope of the forum selection clause in this case.

Agreement, and would not have happened otherwise.[2] *See* Grosh Aff. At ¶ 5. Thus, even if the Court were to narrowly define the scope of the parties' forum selection clause to apply only to disputes that would not have arisen *but for* the parties' Agreement, USG's claims in this case would clearly fall within this restricted scope.[3]

The broad scope of the Agreement is in stark contrast to the parties' much more narrowly tailored 2001 Confidential Disclosure Agreement (the "2001 CDA"). The parties' 2001 CDA was an Agreement narrowly tailored to address only the parties' exchange of specifically defined confidential information. *See* Declaration of Bruce Manning (Manning Decl.) Ex. B at Ex. B. Significantly, the parties executed the 2001 CDA before issuance of either the "USG patent" or "3M patent" referenced in the parties' 2006 Agreement. Accordingly, the parties' 2001 CDA does not contain the broader language necessary to ensure that any disputes regarding those issued patents would be brought in the parties' agreed upon forum.

---

[2] Indeed, all of the parties' communications regarding the issued 3M patent necessarily took place pursuant to the parties' Agreement. The 3M patent issued in May 2006. Complaint, Ex. 2. Although the parties did not execute the Agreement until 2007 – after the 3M patent had issued – they expressly agreed that the Agreement would have an Effective Date of the Agreement would be January 1, 2006, thus ensuring that *all* of the parties' communications regarding the issued 3M patent would be covered by the Agreement. Grosh Aff., Ex. 1 at 1. USG is unable to identify—and clearly has not pleaded—any basis for its "reasonable apprehension of suit" that does not arise from the parties' Agreement.

[3] USG cannot avoid enforcement of the parties' forum selection provision by differentiating between its claims. Given that USG's claim for declaratory relief clearly arises from the subject matter of the parties' Agreement, USG should not be heard to argue that its other closely related claims should be allowed to proceed in this District. Courts in this District have consistently applied forum selection provisions to closely related claims even where not all claims in a given Complaint are covered by a forum selection provision. *See, e.g, Glazer v. Quebecor World, Inc.*, 2006 WL 335791 (N.D. Ill. 2006) (Attached as Larus Aff., Ex. A) (dismissing breach of contract claim arising under related contracts between parties, even though not all contracts contained forum selection clauses).

## II. EVEN IF VENUE IN THIS COURT WERE PROPER, THIS COURT SHOULD DECLINE TO EXERCISE VENUE OVER USG'S CLAIMS.

Finally, even if for some reason the Court is unpersuaded that the Agreement expressly requires any dispute involving the 3M patent or the USG patent to be litigated in Minnesota, this Court should nevertheless decline to exercise jurisdiction over USG's claims.

The exercise of jurisdiction under the Declaratory Judgment Act is discretionary, and district courts have unique and substantial discretion in deciding whether to declare the rights of litigants. 28 U.S.C. § 2201 (2006) (stating that the Court "may" declare the rights of any interested party)[4]; *MedImmune, Inc. v. Genentech, Inc. .*, ____ U.S. ____, ____, 127 S. Ct. 764, 776, 166 L. Ed. 2d 604 (2007) (citing *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286, 115 S. Ct. 2137, 132 L. Ed. 2d 214 (1995)).

This Court may consider equitable, prudential, and policy arguments when deciding whether to use their discretion to dismiss a claim under the Declaratory Judgment Act. *MedImmune*, 127 S.Ct. at 777. For example, a district court can properly decline jurisdiction if it appears that the declaratory relief suit was filed for an improper tactical purpose, such as to improve a party's bargaining position in patent licensing negotiations, i.e. exactly what USG has tried to do here. *EMC Corp. v. Norand Corp.*, 89 F.3d 807, 809 (Fed. Cir. 1996), *overruled in part on other grounds, MedImmune*, 127 S. Ct. at 764. Having agreed to resolve in Minnesota "any dispute arising from the subject matter of th[e] Agreement," USG cannot reasonably argue that its decision to bring this action in this District reflected anything other than an attempt to improve its bargaining position by bringing suit in a forum inconvenient to 3M. Accordingly,

---

[4] 35 U.S.C. § 291 similarly provides that "[t]he owner of an interfering patent may have relief against the owner of another by civil action, and the court may adjudge the question of the validity of any of the interfering patents, in whole or in part."

7

even if this Court were to conclude that USG's claims fall outside of the broad scope of the parties' forum selection clause, it should decline to exercise its jurisdiction over USG's patent-related claims.[5]

USG's repeated assertion that this court should give deference to its first filed action in this District is without merit. This court has considerable discretion in determining whether to dismiss a first filed action. *Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 937 (Fed. Cir. 1993). *Genentech* explicitly recognized that exceptions should be made when "justice or expedience requires." *Id.* Here, it would be unjust to allow a party to avoid obligations it freely entered into. The plain meaning of the forum selection provision requires any litigation arising out of the subject matter of the agreement to be brought in Minnesota. USG disregarded this provision when it filed in this District and it should not benefit from this breach.

### III.    COMMENTS ON CERTAIN OTHER USG STATEMENTS

For the reasons set forth above, this Court should dismiss USG's claims in favor of the action currently pending between the parties in Minnesota.[6] However, while 3M does not wish to take this Court's time addressing every inaccuracy in USG's Memorandum, 3M cannot leave unanswered certain clearly inaccurate assertions made by USG.

First, USG's assertion that 3M's pending claims to enforce the terms of the parties Agreement in Minnesota is an "afterthought strategy" is wholly disingenuous. The Agreement

---

[5]    Of course, in the event that this court declines to exercise jurisdiction over USG's patent-related claims, USG's remaining state law claim for unjust enrichment should similarly be dismissed for lack of federal jurisdiction. *Sanchez & Daniels v. Koresko*, 503 F.3d 610, 615 (7th Cir. 2007) (noting the "well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial.") (citations omitted).

[6]    USG has moved to dismiss the Minnesota action. 3M has not yet responded to USG's motion in the Minnesota action, but will request that the Minnesota court defer to this Court's ruling with respect to enforcement of the parties' forum selection clause. 3M clearly does not wish to advocate that both actions proceed simultaneously. 3M similarly will not advocate that both the Minnesota action and this action should be dismissed.

and the parties' 2001 Confidential Disclosure Agreement each expressly provide that "[t]he relationship created under this Agreement is confidential and is to be treated as [confidential] Information according to the terms of this Agreement." Grosh Aff., Ex. A at §3. Accordingly, 3M could not disclose the parties' relationship under the Agreements in a publicly filed Complaint without USG's express consent. 3M's counsel contacted USG's counsel to obtain such consent before 3M filed its original Complaint in Minnesota. Affidavit of Christopher K. Larus ("Larus Aff.") at ¶ 4. When USG's counsel failed to provide a prompt response to 3M's inquiry, 3M proceeded to file its Complaint asserting those claims it could publicly disclose. On November 27, 2007, USG's counsel responded to 3M's inquiry and confirmed that USG would not contend that the terms of the Agreements must be kept confidential. *Id.* at ¶ 5, Ex. B. The following day, 3M filed its Amended Complaint asserting claims that USG had breached both agreements. *Id.* at ¶ 6.

Second, USG's assertion that this Court should disregard the Affidavit of Sharon Grosh as reflecting inadmissible parol evidence is also without merit. 3M has not offered this Affidavit to contradict the language of the parties' Agreement. To the contrary, as reflected above, 3M asks this Court to enforce the plain language of the parties' Agreement. Ms. Grosh's Affidavit confirms that the parties engaged in detailed licensing negotiations "regarding the subject matter of the USG patent and the 3M patent" after executing their Agreement. *See* Grosh Aff. at ¶¶ 5-7. This is, of course, entirely consistent with USG's own Complaint, which clearly reflects that the communications upon which USG now bases its assertion of a "reasonable apprehension of suit" took place pursuant to the protections of the parties' Agreement.

## CONCLUSION

For the foregoing reasons and the additional reasons set forth in their moving papers, 3M requests that this Court grant their motion to dismiss this case pursuant to the parties' Agreement and its forum selection provision. As the parties expressly agreed in 2006, this dispute should be resolved in the United States District Court for the District of Minnesota, where an action is already pending addressing all of the issues raised in this improperly filed action.

Date: January 18, 2008.                    Respectfully submitted by:

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.


/s/Christopher K. Larus
Martin R. Lueck (Admitted pro hac vice)
Christopher K. Larus (Admitted pro hac vice)
Bruce D. Manning (Admitted pro hac vice)
2800 LaSalle Plaza
800 LaSalle Avenue South
Minneapolis, MN 55402-2015
Tel.: (612) 349-8500
Fax: (612) 339-4181

KEEGAN, LATERZA, LOFGREN & GLEASON, L.L.C

Thomas B. Keegan (#6196077)
Edward W. Gleason (#6204438)
Suite 750
566 West Adams Street
Chicago, IL 60661
Tel.:   (312) 655-0200
Fax:   (312) 655-0202

**ATTORNEYS FOR DEFENDANTS 3M INNOVATIVE PROPERTIES COMPANY AND 3M COMPANY**